2015-1956

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

————————

JOAO BOCK TRANSACTION SYSTEMS, LLC,

*Plaintiff-Appellant*,

v.

FIDELITY NATIONAL INFORMATION SERVICES, INC.,

*Defendant-Appellee*.

————————

**Appeal from the United States District Court**
**for the Middle District of Florida in No. 3:13-cv-00223-TJC-JRK,**
**Judge Timothy J. Corrigan.**

————————

**BRIEF OF APPELLEE**
**FIDELITY NATIONAL INFORMATION SERVICES, INC.**

————————

Deborah G. Segers
FIDELITY NATIONAL
INFORMATION
 SERVICES, INC.
601 Riverside Avenue, Tower
12th Floor
Jacksonville, FL 32204
(414) 357-2209


January 11, 2016

Erika H. Arner
Daniel C. Cooley
Brandon S. Bludau
FINNEGAN, HENDERSON,
FARABOW,
 GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive, Ste 800
Reston, VA 20190
(571) 203-2700

*Attorneys for Defendant-*
*Appellee Fidelity National*
*Information Services, Inc.*

# CERTIFICATE OF INTEREST

Counsel for Appellee Fidelity National Information Services, Inc. certifies the following:

1.  The full name of every party or amicus represented by me is:

    Fidelity National Information Services, Inc.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    N/A

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
    Erika H. Arner
    Daniel C. Cooley
    Brandon S. Bludau

    BAKER & MCKENZIE, LLP
    John G. Flaim
    Richard V. Wells
    W. Barton Rankin
    William V. Roppolo
    Terry A. Sand

    MCGUIRE WOODS, LLP
    Robert E. Bilik
    Emily Y. Rottmann
    Kimberly T. Mydock

    FIDELITY NATIONAL INFORMATION SERVICES, INC.
    Deborah G. Segers

# TABLE OF CONTENTS

I.    COUNTERSTATEMENT OF THE ISSUES ..................................................1

II.   STATEMENT OF THE CASE ....................................................................1

III.  STATEMENT OF FACTS ...........................................................................2

    A.    The Asserted Patents Use Conventional Computer Components for Account Monitoring and Authorization .........................................2

    B.    Claims of JBTS's '003 Patent Were Found Invalid Under 35 U.S.C. § 101 in the *Jack Henry* Action and Summarily Affirmed by This Court........................................................................5

        1.    On Appeal in *Jack Henry*, JBTS Argued that the Court Erred in Its Abstract-Idea Analysis and the Claims Were Directed to "Special Purpose" Computers...................................7

    C.    JBTS Sued FIS on Claims Having the Same Features as Those Invalidated in *Jack Henry* ....................................................................9

    D.    Upon Motion by FIS, the District Court Granted Summary Judgment, Invalidating the Asserted Claims Under § 101.................11

        1.    Under Step One of the *Mayo*/*Alice* Analysis, the District Court Found that the Asserted Patents Recite an Abstract Idea......................................................................................12

        2.    Under Step Two of the *Mayo*/*Alice* Analysis, the District Court Concluded that the Asserted Claims Failed to Recite "Something More" to Render Them Patent Eligible ................................................................................13

IV.   SUMMARY OF ARGUMENT...................................................................14

V.    STANDARD OF REVIEW........................................................................16

VI.   ARGUMENT.............................................................................................16

    A.    JBTS Urges the Court to Rewrite the Supreme Court's Established Precedent for Patent-Eligible Subject Matter .................16

B.      JBTS Asks the Court to Overrule the "Problematic" *Mayo/Alice* Test and Invent a New Way to Measure Preemption.........................21

C.      The Asserted Claims Are the Type of Claims the Supreme Court and This Court Have Repeatedly Found Patent Ineligible .......23

　　　1.      The Claims Fit Squarely Within the Supreme Court's Abstract Idea Exception...........................................................23

　　　2.      The Claims Do Not Recite "Something More" Than the Abstract Idea ...........................................................................29

D.      This Case Is a Rerun of the *Jack Henry* Appeal in Which This Court Summarily Affirmed the Invalidity of JBTS's Claims.............35

E.      The District Court Correctly Applied Controlling Precedent and Afforded JBTS Adequate Due-Process Safeguards...........................38

F.      JBTS's Arguments Concerning Infringement Are Moot....................40

VII.   CONCLUSION AND STATEMENT OF RELIEF SOUGHT.....................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ................................................................15, 16, 23

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
    No. 6:15-CV-0030-WSS-JCM, 2015 WL 3764356 (W.D. Tex. July
    7, 2015) ...........................................................................................................19

*Alice Corp. v. CLS Bank International*,
    134 S. Ct. 2347 (2014).................................................................................*passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) ......................................................................21

*BankAmerica Corp. v. United States*,
    462 U.S. 122 (1983).........................................................................................39

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
    No. 3:14-cv-3942-M, 2015 WL 2341074 (N.D. Tex. May 15,
    2015) ................................................................................................................19

*Bilski v. Kappos*,
    561 U.S. 593, 611 (2010).................................................................................23

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ..................................................................16, 39

*Constant v. Advanced Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988) ..................................................................38, 39

*Content Extraction & Transmission LLC v. Wells Fargo Bank,
    National Association*,
    776 F.3d 1343 (Fed. Cir. 2014) ..................................................................23, 25

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ......................................................................35

iv

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ..........................................................................6

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
   No. 8:11-cv-2826-T-23TBM, 2014 WL 4540319 (M.D. Fla. Sept.
   11, 2014) .................................................................................................39

*Hutto v. Davis*,
   454 U.S. 370 (1982).................................................................................22

*In re Nuijten*,
   500 F.3d 1346 (Fed. Cir. 2007) ...............................................................27

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ..........................................................*passim*

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
   No. 2:12-cv-800-WCB, 2015 WL 3452469 (E.D. Tex. May 29,
   2015)  ....................................................................................................19

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*,
   66 F. Supp. 3d 829 (E.D. Tex. 2014)........................................................39

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
   132 S. Ct. 1289 (2012).......................................................................*passim*

*MyMedicalRecords, Inc. v. Walgreen Co.*,
   No. 2:13-cv-00631-ODW, 2014 WL 7339201 (C.D. Cal. Dec. 23,
   2014) ......................................................................................................39

*OIP Technologies, Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015), *cert. denied*, No. 15-642,
   2015 WL 7258645 (U.S. Dec. 14, 2015)...............................................23, 39, 40

*Omega Engineering, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ...............................................................31

*Open Text S.A. v. Alfresco Software Ltd.*,
   No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19,
   2014) ......................................................................................................39

*Parker v. Flook*,
    437 U.S. 584 (1978)................................................................39

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ...........................................18, 29

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008) ...................................................34

*Tuxis Technologies, LLC v. Amazon.com, Inc.*,
    No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) .......................39

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
    374 F.3d 1151 (Fed. Cir. 2004) ..................................................40

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ..............................................*passim*

*Versata Development Group, Inc. v. SAP America, Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) .............................................18, 29

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ...................................................31

*Zenith Electronics Corp. v. PDI Communication Systems, Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008) .............................................40, 41

## Statutes

35 U.S.C. § 101 ..............................................................*passim*

35 U.S.C. § 102 ...................................................................26

35 U.S.C. § 103 ...................................................................26

## STATEMENT OF RELATED CASES

There has been no other appeal from the present case in this or any other appellate court.

Claims from one of the patents at issue in this case—U.S. Patent No. 7,096,003—were recently ruled invalid under 35 U.S.C. § 101. *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513 (D. Del. 2014). That ruling was appealed and summarily affirmed by this Court. *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 2015-1245 (Fed. Cir. Oct. 13, 2015).

## I.    COUNTERSTATEMENT OF THE ISSUES

1.    Did the district court correctly grant summary judgment of invalidity under 35 U.S.C. § 101 when the claims at issue recite an abstract idea involving a basic commercial practice with only generic computer components added?

2.    Does a district court's faithful application of appellate precedent violate due process?

## II.    STATEMENT OF THE CASE

The district court analyzed Asserted Claims of related U.S. Patent Nos. 6,047,270 ("the '270 patent") and 7,096,003 ("the '003 patent")[1] and concluded that they recite an abstract idea—account monitoring and authorization—embodied in generic computer componentry. Applying Supreme Court precedent, the district court held the Asserted Claims invalid under 35 U.S.C. § 101 and entered summary judgment of invalidity. A0001-27; *Joao Bock Transaction Sys., LLC v. Fid. Nat'l Info. Servs., Inc.*, No. 3:13-cv-223-J-32JRK, 2015 WL 4743669 (M.D. Fla. Aug. 10, 2015).

On appeal, Joao Bock Transaction Systems, LLC ("JBTS") argues that its claims cannot recite an abstract idea because they are directed to a concrete, tangible apparatus—a computer. However, the apparatus-claims-must-be-patent-

---

[1] The Asserted Claims are claims 3, 20, 21, 28, 49, and 51 of the '270 patent and claims 101, 104, 117, 135, 138, 148, 157, 180, 232, 236, 240, 244, 250, 252, 307, 313, 336, 345, and 346 of the '003 patent.

1

eligible argument has been squarely rejected by the Supreme Court. JBTS next contends that its invention should be patent eligible because it comprises "unconventional" and "extremely powerful" computers and requires "custom software." But these conclusory assertions contradict the claims and specification, which recite a "processor" and a "memory device" and a computer running "widely known data processing and/or software routines." As the district court concluded, the Asserted Claims recite an abstract idea and lack other features that amount to significantly more. The Asserted Claims are therefore patent ineligible, and the district court's judgment should be affirmed.

## III.  STATEMENT OF FACTS

### A.    The Asserted Patents Use Conventional Computer Components for Account Monitoring and Authorization

The '270 and '003 patents stem from a common parent and have overlapping disclosure. A0088-162; A0164-227. Both patents seek to "minimiz[e] the fraudulent and/or unauthorized use of [a] card and/or [an] account number" by "obtaining an authorization" or "providing notice to the cardholder before, during and/or shortly after a transaction." A0186 [2:45-55]; A0121-22 [2:60-3:3]. To achieve this, the patents disclose a point-of-sale or transaction authorization device/terminal, a communication device, and a central processing computer. *See, e.g.*, A0170; A0185; A0090.

2

The point-of-sale authorization terminal "may be any of the widely used and well known devices, terminals, or computers for providing point-of-sale authorization for transactions." A0127 [14:60-63]; A0192 [13:8-11]. According to claim 137 of the '003 patent, "[a] transaction authorization device" is "located at a point-of-sale in a transaction involving an in-person transaction or at a location of at least one of a goods provider and a service provider in a transaction involving at least one of a telephone order, a mail order, an Internet transaction, and an on-line transaction." A0214 [58:25-30].

The patents also describe the "communication device," which "may receive signals and/or data from either or both of the point-of-sale terminal . . . and/or the central processing computer." A0192 [14:19-22]; A0128 [16:8-11]. Claim 222 of the '003 patent recites that the "communication device" may be one of "a beeper, a pager, a telephone, a two-way pager, a reply pager, a home computer, a personal computer, a personal communication device, a personal communication services device, a television, an interactive television, a digital television, a personal digital assistant, a display telephone, a video telephone, a watch, a cellular telephone, a wireless telephone, a mobile telephone, a display cellular telephone, and a facsimile machine." A0219 [67:22-31]; *see also* A0192 [14:52-63]; A0128 [16:41-53].

3

The central processing computer "may be a mainframe computer, a mini-computer, a micro-computer, a server computer, . . . and/or any other suitable computer or computer system." A0192 [13:66-14:3]; A0128 [15:54-58]. "The central processing computer 3 may utilize any of the widely known data processing and/or software routines, which are known to those skilled in [the] art, in order to process transaction requests and/or authorizations . . . ." A0194 [17:26-29]; A0130 [19:21-24]. The central processing computer comprises a "central processing unit or CPU 3A, associated random access memory 3B (RAM) and read only memory 3C (ROM) devices, which are connected to the CPU 3A," "a transmitter(s) 3F for transmitting signals and/or data," and a "receiver(s) 3G for receiving signals and/or data." A0193 [15:45-16:3, 16:35-50]; A0129 [17:37-63, 18:28-42]. The Asserted Claims variously recite (both directly and by dependency) "a processor," "a processing device," "a memory device," "a transmitter," "a receiver," and a "central transaction processing computer." *See, e.g.*, A0213 [55:11, 18, 24, 56:35]; A0222 [74:24]; A0156 [71:4, 8, 10, 21].

The transaction terminal, communication device, and central processing computer may communicate using "any communications system." A0192 [14:9-10]; A0128 [15:63-65]. And in those embodiments directed to use of the Internet, the systems may implement "all of the methods and/or techniques for providing information and/or data over on-line service and/or on, or over, the Internet, and/or

the World Wide Web, . . . which are known as of the filing date of this application." A0203 [36:43-50]; A0151 [62:16-23].

### B. Claims of JBTS's '003 Patent Were Found Invalid Under 35 U.S.C. § 101 in the *Jack Henry* Action and Summarily Affirmed by This Court

JBTS asserted the '003 patent in a Delaware action against Jack Henry.[2] A0004. Jack Henry filed a motion for summary judgment, and the Delaware Court invalidated all of the asserted '003 patent claims, including claims 102 and 317, under 35 U.S.C. § 101. A0344-63. Claims 104, 117, and 135 asserted in this case depend from invalid claim 102, and asserted claims 336, 345, and 346 depend from invalid claim 317.[3] A0321.

The Delaware Court analyzed the claims under the two-step analysis of *Mayo/Alice*, first determining that the claims included an abstract idea involving "a conventional business practice utilized by bankers or financial institutions in their dealings with individual account holders without the use of computers." A0358. In

---

[2] *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 1:12-cv-01138-SLR (D. Del. Sept. 14, 2012).

[3] Claims of the '270 patent were previously asserted in a California action against Charles Schwab, but were dismissed with prejudice after Charles Schwab's invalidity contentions were served, prompting the court to remark "I can't believe you asserted 52 junk claims." A0702; Hr'g Tr. at 32:14-15, *Joao Bock Transaction Sys., LLC v. Charles Schwab & Co.*, No. 5:13-cv-00693-LHK (N.D. Cal. Nov. 20, 2013); A0313. Many of the '270 patent claims dismissed in the *Charles Schwab* action were then asserted against Fidelity National Information Services, Inc. ("FIS") in this case. A0313.

addressing the abstract idea, the Delaware Court found persuasive Jack Henry's "Mr. Ashley" hypothetical illustrating a step-by-step comparison of claim 30 of the '003 patent with a conventional business practice performed without a computer. A0356-58.

Turning to step two of the *Mayo/Alice* analysis, the Delaware Court rejected JBTS's argument that the claims use "specific computers" with bank processing software, making them "special purpose computers," noting that JBTS admitted that it did not invent the computer components or the banking software. A0358. The Delaware Court was unpersuaded by JBTS's expert, who did not "provide any examples of any of the components performing functions other than traditional computing functions such as storing, processing, and transmitting." A0359. And the court found that, "[w]hile the computer components do allow the abstract idea to be performed more quickly, this does not impose a meaningful limit on the scope of the claim." *Id.*

The Delaware Court distinguished the '003 claims from the claims in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), because the '003 claims fell "squarely" within the category of "merely recit[ing] the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." A0360 (quoting *DDR*

*Holdings*, 773 F.3d at 1257). "The fact that the asserted claims are apparatus claims, not method claims, does not change the court's analysis." *Id.*

The Delaware Court also rejected JBTS's argument that its claims do not preempt the abstract idea "because a bank could communicate with its customers without using the Internet, i.e., via mail, telephone, or in person." A0361. The Delaware Court instead found that this argument "turn[s] the analysis on its head," noting that, with the ubiquity of computers, "[a]llowing the asserted claims to survive would tie up any innovation related to performing banking transactions on computers which would, in turn, monopolize the 'abstract idea.'" *Id.*

### 1. On Appeal in *Jack Henry*, JBTS Argued that the Court Erred in Its Abstract-Idea Analysis and the Claims Were Directed to "Special Purpose" Computers

JBTS appealed the *Jack Henry* decision. During oral argument, JBTS argued that the Delaware Court failed to perform the first step of *Alice* by identifying a particular abstract idea. The Panel responded, "you seem to be complaining that there's inconsistency in this case in articulating the first step, but who cares? If we can articulate an abstract idea as the first step, that's all that's required. We're on summary judgment here." Oral Argument at 6:00-6:15, *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 2015-1245 (Fed. Cir. Oct. 6, 2015).[4]

---

[4]    *Available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1245.mp3.

The Court commented that the claims in this appeal "are exactly the same kinds of claims that the Supreme Court has rejected and that we've rejected repeatedly since *Alice*." *Id*. at 6:18-6:49.

Turning to the second step of the *Mayo/Alice* analysis, JBTS asserted that the invention "is an essential transaction processing computer," prompting the Court to question whether JBTS was arguing that a programmed computer is patentable under § 101 and remark, "Isn't that long gone after *Alice*?" *Id*. at 7:43-7:57. JBTS attempted to distinguish the invention as a "special purpose computer," a computer that "didn't exist" and that was "arranged and programmed in a way that is nonconventional or not traditional in this specific industry." *Id*. at 7:58-8:26. In response, the Court pressed JBTS to identify "where in the claims does it say anything about a new type of computer? It talks about a memory device and a processing device. Those sound like the most basic, generic computer components imaginable." *Id*. at 9:01-9:11.

On October 13, 2015, notwithstanding JBTS arguing that the claimed arrangement of computing devices had never before been done because "Internet banking didn't exist in 1996," *id*. at 24:10-24:13; JBTS's *Jack Henry* Opening

8

Appellate Brief[5] 5, the Court summarily affirmed the Delaware Court's ruling of invalidity under Federal Circuit Rule 36. A0623-24; *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 2015-1245 (Fed. Cir. Oct. 13, 2015).

### C.    JBTS Sued FIS on Claims Having the Same Features as Those Invalidated in *Jack Henry*

JBTS sued FIS, asserting claims of the '003 and '270 patents that recite common features with the claims previously invalidated. A0014 n.11. Many '003 claims at issue here depend from claims invalidated in *Jack Henry*, including claims 104, 117, and 135, which depend from invalid claim 102, and claims 336, 345, and 346, which depend from invalid claim 317. A0321. Claim 104 of the '003 patent and claim 3 of the '270 patent are representative of the Asserted Claims.

Claim 104 of the '003 patent depends from claim 102—which was invalidated in the *Jack Henry* action—and together they recite:

> 102.   *A transaction security apparatus, comprising:*
>
> *a memory device, wherein the memory device stores a limitation or restriction on a use of an account, wherein the account is capable of being utilized in transactions involving the purchase of goods and services, wherein the limitation or restriction is transmitted from a communication device associated with an individual account holder, and further wherein the limitation or restriction is transmitted to a receiver on or*

---

[5] Joao Bock Transaction Systems, LLC's Opening Appellate Brief, *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 2015-1245, 2015 WL 1383038 (Fed. Cir. Mar. 18, 2015), subsequently referred to as "JBTS JH Br."

*over at least one of the Internet and the World Wide Web, wherein the limitation or restriction is automatically received by the receiver, and further wherein the limitation or restriction is automatically stored in the memory device; and*

*a processing device, wherein the processing device processes an authorization request for a transaction on the account, wherein the processing device utilizes the limitation or restriction automatically stored in the memory device in processing the authorization request, and further wherein the processing device generates a signal containing information for authorizing or disallowing the transaction*[;]

[further comprising claim 104, which recites:]

wherein the account is a debit card account or a currency card account.

A0213 [55:10-31, 55:34-35] (portion invalidated in *Jack Henry* italicized).

Claim 3 of the '270 patent depends from claim 1 and together they recite:

1.    An apparatus for providing account security, comprising:

a receiver for receiving one of a limitation and a restriction on usage of an electronic money account, wherein said one of a limitation and a restriction are received from an account holder;

a memory device for storing said one of a limitation and a restriction; and

a processor for processing a transaction on the electronic money account in conjunction with said one of a limitation and a restriction,

wherein said processor generates a first signal, and further wherein said first signal contains information for one of approving and disapproving the transaction[;]

[further comprising claim 3, which recites:]

a transmitter for transmitting a notification signal to a communication device associated with the account holder, wherein the communication device is one of a device for receiving said notification signal, a telephone, a beeper, a pager, a two-way pager, a reply pager, a home computer, a personal computer, a personal communication device, a personal communication services device, a digital communication device, a television, an interactive television, a digital television, a personal digital assistant, a display telephone, a radio, a car radio, a video telephone, a watch, a cellular telephone, a wireless telephone, a mobile telephone, a display cellular telephone, and a facsimile machine.

A0156 [71:2-15, 7:19-32].

### D.    Upon Motion by FIS, the District Court Granted Summary Judgment, Invalidating the Asserted Claims Under § 101

After the district court's opinion in *Jack Henry* but prior to its affirmance on appeal, FIS moved for summary judgment of invalidity under 35 U.S.C. § 101 on all of the Asserted Claims in this case. A0316. FIS detailed how the Asserted Claims recite an abstract idea and generic computer components. A0319-28. FIS presented charts showing how the Asserted Claims share the same limitations as the '003 patent claims invalidated in *Jack Henry*. A0322-25; A0378; A0625-50.

The district court granted FIS's motion for summary judgment under 35 U.S.C. § 101. A0001-36. The district court attributed "no significance (other than strategy) to the fact that [JBTS] asserts only so-called 'apparatus' (or 'system' or 'machine') claims here, and no 'method' claims," finding the only difference

between the nearly-identical claims is that the "apparatus claim adds nouns . . . to the verbs used in the method claim." A0024. Noting the "nearly-identical" method and apparatus claims in the patents, the district court heeded the Supreme Court's warning "against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art." *Id.* (quoting *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2360 (2014)). The district court also noted that "the '003 Patent contains a very similar specification as the '270 Patent and generally discloses the same invention," with the relevant distinction between the two being that "the '003 Patent specifically teaches using the Internet, the World Wide Web, email, and wireless devices to facilitate the monitoring and/or authorization described in the '270 Patent." A0003. For purposes of the patent-eligibility analysis, the district court adopted JBTS's proposed constructions of the disputed terms, finding, however, that "[d]oing so changes neither the Court's understanding of the basic character of the subject matter of the Asserted Claims nor the outcome of its analysis." A0007.

> ## 1.    Under Step One of the *Mayo/Alice* Analysis, the District Court Found that the Asserted Patents Recite an Abstract Idea

According to the district court, "[i]n its broadest form, the claims relate to account monitoring and authorization," but FIS's "narrower formulation also

accurately describes the claims." A0013.[6] The district court rejected JBTS's argument that purported flaws or inconsistencies in the phrasing of the abstract ideas in this case and in *Jack Henry* were meaningful. A0017. The district court noted that "nothing in the case law requir[es] the abstract idea to be susceptible to only one linguistic formulation," and the differences in wording "all reflect[] the same patent-ineligible abstract idea encompassed by the patents." *Id.*

The district court also expressly rejected JBTS's arguments that the claims are not invalid "because any abstract idea they might contain is a novel one, not 'a fundamental business practice long prevalent in our system of commerce,'" finding this argument more appropriate to the second step of the analysis. A0018.

> **2. Under Step Two of the *Mayo/Alice* Analysis, the District Court Concluded that the Asserted Claims Failed to Recite "Something More" to Render Them Patent Eligible**

Turning to step two of the *Mayo/Alice* analysis, the Court noted that JBTS "does not claim to have invented any of the computer components recited in the claims or to have written the 'widely known data processing and/or software routines, which are known to those skilled in [the] art' that the patent specifications propose be run on the processor recited in the Asserted Claims." A0021 (citations omitted). The "kinds of specific limitations [JBTS] identifies in the patents—like

---

[6] FIS asserted the abstract idea was "providing account or transaction security using account limits or account holder notifications." A0321-22.

real-time communication and eliminating bank employees from the process—demonstrate that the Asserted Claims employ computers only for their most basic functions—speed and automation—in performing tasks that [JBTS] elsewhere concedes could be performed even without computers." A0022-23. The Court rejected JBTS's arguments because "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept." A0023 (alteration in original) (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015)).

The district court rejected JBTS's asserted factual dispute "regarding what was conventional in computers in 1996" as a "straw man, since the dispute only exists if one accepts that the 'powerful' computers described by [JBTS's] expert are actually recited in the patents." A0022. The district court noted that JBTS "does not claim to have invented these powerful computers," A0021 n.15, and found "the requirement of specialized computer components created by [JBTS's] expert [as well as any of the other specializations claimed by the expert] finds no support in the patents themselves," A0021-22.

The district court found the Asserted Claims invalid. JBTS appealed.

## IV. SUMMARY OF ARGUMENT

The Asserted Claims are the type of claims the Supreme Court and this Court have repeatedly found invalid. They include an abstract idea—account

monitoring and authorization—embodied in generic computer components. The district court correctly reached this conclusion. And analyzing different claims reciting the same substance, the *Jack Henry* court did as well.

Even though multiple courts agree that JBTS's purported inventions are not patent eligible, JBTS maintains that the Asserted Claims do not recite abstract ideas under step one of *Mayo/Alice* because the claims are directed to a physical, tangible computer falling within the statutory categories of § 101. However, the Supreme Court has already rejected this argument as elevating a claim's form over its substance, turning patent eligibility into a draftsman's art. Courts have repeatedly found unpatentable abstract ideas in claims that include apparatus.

Turning to step two of *Mayo/Alice*, JBTS argues that its claims are patent eligible because they recite "non-generic," "specialized," and "extremely powerful" computers. But no amount of conclusory assertion can change the language of the claims and the written description, which recite a generic "processor," a "memory device," and other common components, such as a "display device" and an "input device."

Finally, JBTS attacks the *Mayo/Alice* test as unconstitutional, suggesting that it is arbitrary and lacking in rigor. But scores of decisions from this Court and others have successfully applied the *Mayo/Alice* test, and JBTS fails to explain how the test or its application in this case violates any constitutional right. For

these reasons, the district court correctly invalidated the Asserted Claims under § 101, and its judgment should be affirmed.

## V.    STANDARD OF REVIEW

Section 101 patent eligibility is a question of law appropriate for resolution on a motion for summary judgment. *See, e.g.*, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). This Court reviews questions concerning patent-eligible subject matter under § 101 without deference. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014).

## VI.    ARGUMENT

### A.    JBTS Urges the Court to Rewrite the Supreme Court's Established Precedent for Patent-Eligible Subject Matter

The Supreme Court has "long held that . . . abstract ideas are not patentable" under 35 U.S.C. § 101. *Alice*, 134 S. Ct. at 2354 (citation omitted). Abstract ideas, "no matter how '[g]roundbreaking, innovative, or even brilliant,' are outside what the statute means by 'new and useful process, machine, manufacture, or composition of matter.'" *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (alteration in original) (citations omitted).

In *Alice*, the Supreme Court affirmed the *Mayo* two-step framework for distinguishing unpatentable abstract ideas from patent-eligible applications of those concepts. *Alice*, 134 S. Ct. at 2355. First, one must determine whether claims are drawn to a patent-ineligible concept. *Id*. If the answer is "yes," then one must

look to "the elements of the claim both individually and 'as an ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original) (citations omitted); *see also* A0009-10.

JBTS acknowledges that the district court followed *Mayo/Alice*, but accuses it—and the Supreme Court—of skipping an "initial classification exercise." Blue Br. 21-22. According to JBTS, the *Mayo/Alice* test "should have concluded . . . with a finding that [the] asserted claims were directed to statutory subject matter, namely a 'machine'" because "the asserted claims are directed to a machine which by definition cannot be an abstract idea." *Id.*

The Supreme Court in *Alice* addressed this argument and rejected it. *Alice* stated that "[t]here is no dispute that a computer is a tangible system (in § 101 terms, a 'machine'), or that many computer-implemented claims are formally addressed to patent-eligible subject matter." *Alice*, 134 S. Ct. at 2358-59. However, "if that were the end of the § 101 inquiry, an applicant could claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept," which "would make the determination of patent eligibility 'depend simply on the draftsman's art,' thereby eviscerating the rule that

'[l]aws of nature, natural phenomena, and abstract ideas are not patentable.'" *Id.* at 2359 (alteration in original) (citations omitted).

Therefore, as the district court noted, *see* A0010-12, merely claiming an apparatus is not enough. Indeed, *Alice* invalidated apparatus claims. *Alice*, 134 S. Ct. at 2353 (finding patent ineligible a computer system for exchanging obligations). And this Court has likewise invalidated apparatus claims reciting unpatentable abstract ideas. *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333-34 (Fed. Cir. 2015) (finding a claim to an apparatus for determining a price ineligible for patenting); *Intellectual Ventures I*, 792 F.3d at 1369-70 (invalidating a claim to a "system for providing web pages accessed from a web site"); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007-08 (Fed. Cir. 2014) (invalidating system claims for managing a game of bingo). Wrapping an abstract idea in an apparatus does not make it patent eligible. The Court should decline JBTS's invitation to find error where the district court faithfully followed precedent.

JBTS also argues, without support, that the *Mayo/Alice* test should be limited to "process" claims, which is where the test "really applies," and urges error where the district court did not state that the Asserted Claims were merely "disguised" process claims. Blue Br. 23. Courts have made no such distinction and have invalidated apparatus claims without deeming them "disguised" process

18

claims. *See Intellectual Ventures I*, 792 F.3d at 1369-70 (invalidating a representative system claim comprising a generic web server); *Affinity Labs of Tex., LLC v. DirecTV, LLC*, No. 6:15-CV-0030-WSS-JCM, 2015 WL 3764356 (W.D. Tex. July 7, 2015) (invalidating a representative "broadcast system" claim); *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-800-WCB, 2015 WL 3452469 (E.D. Tex. May 29, 2015) (J. Bryson) (invalidating representative system claim comprising a host computer, a database, and an application program); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, No. 3:14-cv-3942-M, 2015 WL 2341074 (N.D. Tex. May 15, 2015) (invalidating representative system claims reciting a computer and server).

Moreover, even if *Mayo*/*Alice* were limited to process claims "dressed up" as apparatus claims—which it is not—JBTS's claims would still be ineligible because that is what they are. For example, independent claims 1 and 19 of the '270 patent—which are incorporated into dependent claims 3 and 20 at issue in this appeal—are merely redrafted apparatus versions of method claims 9 and 31. As the district court commented, "the apparatus claim adds nouns . . . to the verbs used in the method claim." A0024. Where claim 9 recites "receiving," claim 1 introduces "a receiver for receiving"; where claim 9 recites "storing," claim 1 introduces "a memory device for storing"; and where claim 9 recites "processing," claim 1

introduces "a processor for processing." The remaining language in claims 1 and 9 is identical.

| Claim 9 of '270 patent | Claim 1 of '270 patent |
|---|---|
| A method for providing account security, comprising: | An apparatus for providing account security, comprising: |
| *receiving* one of a limitation and a restriction on usage of an electronic money account, wherein said one of a limitation and a restriction are received from an account holder; | *a receiver for receiving* one of a limitation and a restriction on usage of an electronic money account, wherein said one of a limitation and a restriction are received from an account holder; |
| *storing* said one of a limitation and a restriction; | *a memory device for storing* said one of a limitation and a restriction; and |
| *processing* a transaction on the electronic money account in conjunction with said one of a limitation and a restriction; and | *a processor for processing* a transaction on the electronic money account in conjunction with said one of a limitation and a restriction, |
| *generating a first signal*, wherein said first signal contains information for one of approving and disapproving the transaction. | wherein said *processor generates a first signal*, and further wherein said first signal contains information for one of approving and disapproving the transaction. |

Independent claims 19 and 31 follow the same pattern, replacing "processing" with "a processor for processing" and "transmitting" with "a transmitter for transmitting." JBTS's "apparatus"-type independent claims are process claims born of "a drafting effort designed to monopolize the [abstract idea]." *Alice*, 134 S. Ct. at 2357 (alteration in original) (citation omitted).

The district court applied the *Mayo/Alice* framework, and under that law, JBTS's claim-format argument has been rejected. No matter how JBTS's claims

are classified under the four statutory categories, the district court properly concluded they are unpatentable under § 101. A0025.

**B.    JBTS Asks the Court to Overrule the "Problematic" *Mayo/Alice* Test and Invent a New Way to Measure Preemption**

JBTS faults the district court for allegedly ignoring preemption concerns, Blue Br. 51, but then moots its own argument. According to JBTS, "the Court did not even mention preemption, much less address this fundamental underlying concern that gives rise to the *Mayo/Alice* Test,"[7] *id.*, but JBTS then admits that the "*Mayo/Alice* Test *is* the entire preemption analysis," *id.* at 53 (emphasis added). In particular, this Court has held that "questions on preemption are inherent in and resolved by the § 101 analysis," and "[w]here a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, . . . preemption concerns are fully addressed and made moot." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

JBTS attacks the *Mayo/Alice* test itself, arguing that it is an "imperfect measure of the preemption concerns of the Supreme Court in the judicially-created

---

[7] JBTS's statement that the district court "did not even mention preemption" is factually incorrect. The district court specifically referenced JBTS's preemption arguments, and then rejected them. *See* A0020 (rejecting JBTS's argument that the claims "contain sufficient limitations to avoid *preempting* all applications of the idea" (emphasis added)); A0023 n.16 (rejecting JBTS's argument that the "patents do not *preempt* the entire abstract idea because performing the same tasks by hand, in person, or over the phone would not infringe" (emphasis added)).

exceptions to the statutory requirements of 35 U.S.C. § 101." Blue Br. 48. Regardless, courts are bound by the Supreme Court's test. As JBTS admitted, "[u]nless we wish anarchy to prevail within the federal judicial system, a precedent of [the Supreme Court] must be followed by the lower federal courts . . . ." *Id.* at 18 (quoting *Hutto v. Davis*, 454 U.S. 370, 375 (1982)).

Even if there was a preemption test separate from the *Mayo/Alice* test, the Asserted Claims would fail it. For example, to avoid infringement, JBTS recommends that a bank "communicate with its account holders in person, by mail, or over the telephone," or use "direct-dial" or "modem-to-modem communications" rather than using the Internet or World Wide Web. *Id.* at 41. Noninfringement can also be achieved, according to JBTS, by avoiding email and communications with a wireless device. *Id.* at 41-42. JBTS's suggestion that banks must perform account monitoring and authorization without using basic technologies that predate JBTS's patent, like computers, email, or the Internet, only further highlights the impermissibly preemptive scope of the Asserted Claims. As the district court and the *Jack Henry* court concluded, JBTS's preemption arguments "turn[] the analysis on its head." A0023 n.16 (citation omitted).

**C.    The Asserted Claims Are the Type of Claims the Supreme Court and This Court Have Repeatedly Found Patent Ineligible**

**1.    The Claims Fit Squarely Within the Supreme Court's Abstract Idea Exception**

As the district court held, the claims relate to the abstract idea of "account monitoring and authorization," A0013, which is a "basic commercial practice[]," A0019. Little daylight exists between the abstract idea of account monitoring and authorization and *Alice*'s patent-ineligible idea of "intermediated settlement," *Alice*, 134 S. Ct. at 2357, and *Bilski*'s unpatentable "hedging risk," *Bilski v. Kappos*, 561 U.S. 593, 611 (2010). Account monitoring and authorization is also similar to other ideas found unpatentably abstract by this Court. *Intellectual Ventures I*, 792 F.3d at 1367 (tracking financial transactions to determine whether they exceed a preset spending limit); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015), *cert. denied*, No. 15-642, 2015 WL 7258645 (U.S. Dec. 14, 2015) (offer-based price optimization); *Ultramercial*, 772 F.3d at 715 (using advertising as an exchange or currency); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (collecting data, recognizing certain data within the collected data set, and storing that recognized data in a memory); *Accenture Global Servs.*, 728 F.3d at 1346 (generating tasks based on rules to be completed upon the occurrence of an

event). The district court correctly concluded that the Asserted Claims recite an abstract idea.

### a)     JBTS's Linguistic-Certainty Requirement for the Abstract Idea Is Unsupported by Law

JBTS asks the Court to require linguistic certainty in identifying the abstract idea. According to JBTS, the district court "re-wrote" the abstract idea and made it a "moving target." Blue Br. 24-25. But as the district court stated, "there is nothing in the case law requiring the abstract idea to be susceptible to only one linguistic formulation." A0017. In *Alice*, the district court, the Federal Circuit, and the Supreme Court all described the abstract idea differently, calling it "intermediated settlement," *Alice*, 134 S. Ct. at 2352, "employing a neutral intermediary to facilitate simultaneous exchange of obligations in order to minimize risk," *id*. at 2353 (citation omitted), "reducing settlement risk by effecting trades through a third-party intermediary," *id*. (citation omitted), and "use of a third party [intermediary] to mitigate settlement risk," *id*. at 2356. Like *Alice*, the abstract idea in the Asserted Claims is the same irrespective of a party's particular words for describing it.

JBTS asserts that the district court "single-handedly uprooted the tenets of Patent Law," when, in the context of the abstract-idea analysis, the court concluded that there was no meaningful difference between "account security" and "transaction security." Blue Br. 31-32. Notwithstanding its outcry, JBTS does not

identify a difference between the two. *See id.* at 31. Moreover, as the district court noted, "[e]ven if there were a meaningful difference, any potential imprecision in [FIS's] formulation of the abstract idea could easily be solved by simply saying that the '270 Patent encompasses the abstract idea of 'using account holder notifications or account limits to provide security for financial *accounts*,' while the '003 Patent encompasses the abstract idea of 'using account holder notifications or account limits to provide security for financial *transactions*.'" A0018. JBTS also alleges error in the abstract idea because not all of the claims recite "notifications," nor do all of the claims recite "account limits." Blue Br. 28. But both notifications and account limits fall under account monitoring and authorization. *See supra* § VI.C.1.

Far from "tilting the scale of Patent Law . . . from its foundation" or deeming "every patent" ineligible, Blue Br. 32-33, the district court was merely applying Supreme Court precedent to analyze JBTS's abstract idea.[8]

---

[8] The district court reviewed the claims and found that they are substantially similar to the representative claims and are drawn to the same abstract idea. A0016. JBTS complains that the district court grouped the Asserted Claims under one analysis, Blue Br. 25, but the practice of grouping and then analyzing representative claims for purposes of § 101 is well established. *See, e.g.*, *Intellectual Ventures I*, 792 F.3d at 1367; *Ultramercial*, 772 F.3d at 712; *see also Content Extraction*, 776 F.3d at 1348.

**b)**    **JBTS's Abstract Idea Is Not Novel and JBTS Conflates the First and Second Steps of *Mayo/Alice* When Arguing that It Is**

JBTS incorrectly contends that the claims are not abstract because they embody a "*newly* conceived[,] . . . *new*, special purpose computer, to prevent theft, fraud and other *new* ways to steal . . . ." Blue Br. 25 (emphases added). JBTS continues: "The Asserted Claims use *new* technology in a *new* way, to address *new*, *previously unseen*, security weaknesses in financial transactions . . . ." *Id.* at 25-26 (emphases added); *see also id.* at 29. However, the newness of the technologies in the claims goes to the second step of *Alice*, not the first. *Ultramercial*, 772 F.3d at 715 ("[A]ny novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis."). The district court reached this same conclusion. A0018 ("[N]ovelty is a matter for the second step of the *Mayo/Alice* analysis . . . .").

Moreover, even if novelty is relevant, the district court had "little difficulty deciding that [the claimed] 'method[s] of organizing human activity' are basic commercial practices." A0019 (second alteration in original) (citation omitted). Even JBTS concedes that the "broad, general concepts of account limits and account holder notifications existed in some form before the August 8, 1996 priority date of the asserted claims." Blue Br. 40-41. Both statements are supported by FIS's motion for summary judgment under 35 U.S.C. §§ 102 and 103, which

demonstrates that the Asserted Claims are not novel or nonobvious. *See* A0328-40. Novelty does not affect the first step of *Mayo/Alice*, and even if it did, JBTS's abstract idea is not novel.

> **c)** **Reciting "Concrete" Apparatus Does Not Render Claims Patent Eligible**

JBTS also argues that the district court disregarded evidence under step one of *Mayo/Alice* that the Asserted Claims were "directed to a concrete, tangible article of manufacture." Blue Br. 27. As an initial matter, the district court considered JBTS's expert evidence. *See*, *e.g.*, A0021-22. Moreover, JBTS's argument misses the point. Merely reciting a "concrete" apparatus in a claim, such as a computer, does not create patent-eligible subject matter under *Mayo/Alice*. *Alice*, 134 S. Ct. at 2357; *see supra* § VI.A.

JBTS points to specific embodiments claiming an "electronic mail message" or a "second signal," claiming that these are concrete and not abstract. Blue Br. 28. However, "email" and "signals" do not create patent-eligible subject matter either. *See, e.g.*, *In re Nuijten*, 500 F.3d 1346, 1357 (Fed. Cir. 2007) (concluding that a transitory, propagating signal is not patent eligible); *Ultramercial*, 772 F.3d at 717 ("Any . . . transfer of content between computers is merely what computers do and does not change the [§ 101] analysis."); *see also* A0020. JBTS's entire argument about a "concrete" apparatus misunderstands the law.

### d)     The District Court and This Court Are Well-Suited to Resolve the Issues in This Case

JBTS contends that "[t]he *Mayo* opinion warned against having courts and judges making decisions that require a knowledge base concerning laws of nature, physical phenomena or abstract ideas." Blue Br. 31. *Mayo* said no such thing. Rather, *Mayo* spoke to the difficulty of comparing the preclusive impact of different laws of nature, and suggested that such ideas should be excluded from patenting:

> A patent upon a narrow law of nature may not inhibit future research as seriously as would a patent upon Einstein's law of relativity, but the creative value of the discovery is also considerably smaller. . . . In any event, our cases have not distinguished among different laws of nature according to whether or not the principles they embody are sufficiently narrow. And this is understandable. Courts and judges are not institutionally well suited to making the kinds of judgments needed to distinguish among different laws of nature. And so the cases have endorsed a bright-line prohibition against patenting laws of nature, mathematical formulas and the like, which serves as a somewhat more easily administered proxy for the underlying "building-block" concern.

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1303 (2012) (citations omitted). If anything, *Mayo*'s "bright-line" favored the "prohibition," not the patenting of laws of nature, mathematical formulas, and the like. Therefore, *Mayo* does nothing to save JBTS's invalid claims.

### 2.     The Claims Do Not Recite "Something More" Than the Abstract Idea

#### a)     The Claimed Components Are Generic

The Asserted Claims are unpatentable under the second step of the *Mayo*/*Alice* test because they fail to recite an inventive concept that transforms the abstract idea into "something more." *Alice*, 134 S. Ct. at 2354; *see also* A0021-24. Instead, the claims cover the idea of account monitoring and authorization—which bank employees have been doing for decades—embodied in generic computer components.

Claim 3 of the '270 patent, for example, incorporates from claim 1 a "receiver," a "memory device," and a "processor." Claim 104 of the '003 patent likewise incorporates from claim 102 a "memory device," a "receiver," and a "processing device." These are the same sorts of generic components that failed to confer patent eligibility in prior cases, including *Alice*. *See Alice*, 134 S. Ct. at 2360 (finding apparatus claims invalid that included a data storage unit and a computer); *see also Versata*, 793 F.3d at 1333 (finding apparatus claim invalid that included a processor and a memory); *Intellectual Ventures I*, 792 F.3d at 1369 (invalidating under § 101 a claim to a computer system that included a display and a claim reciting computer means for storing and presenting financial transaction information); *Planet Bingo*, 576 F. App'x at 1008-09 (invalidating system claims including a computer with a central processing unit, a memory, and an input and

output terminal). Indeed, "wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Alice*, 134 S. Ct. at 2358 (alterations in original) (quoting *Mayo*, 132 S. Ct. at 1297).

The Asserted Claims also recite laundry lists of generic components to create the illusion of substance where there is none. For example, independent claim 317 of the '003 patent, which is incorporated into dependent claims 336, 345, and 346, recites, "wherein the communication device is at least one of a beeper, a pager, a telephone, a two-way pager, a reply pager, a home computer, a personal computer, a personal communication device, a personal communication services device, a television, an interactive television, a digital television, a personal digital assistant, a display telephone, a video telephone, a watch, a cellular telephone, a wireless telephone, a mobile telephone, a display cellular telephone, and a facsimile machine." A0222 [74:12-39]. This and other laundry lists found in the claims recite common electronic devices used for their traditional purposes. A0375-77.

The Asserted Claims of the '003 and '270 patents wrap the abstract idea in generic computer components that simply "apply it." *See Alice*, 134 S. Ct. at 2358. As the district court concluded, "The recitation of computers in the Asserted

Claims adds nothing beyond the direction to use a computer to provide account limits and notifications. Given the ubiquity of computers, finding the Asserted Claims valid would allow [JBTS] a patent (or two) over an entire abstract idea." A0023 (footnote omitted).

> b) **JBTS's "Evidence" About "Very Powerful" Computers and Other Specialized Componentry Is Contradicted by the Claims and the Specification**

JBTS contends that the district court could not enter summary judgment because it "failed to consider the evidence presented by JBTS and its expert, namely that the asserted claims do not recite generic computers." Blue Br. 26; *see also id.* at 35-36. JBTS's "evidence," however, was nothing more than a series of unsupported expert statements, and the district court correctly rejected it. A0021-22. An expert declaration cannot be used to "rewrite the patent's specification." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1332 (Fed. Cir. 2003) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996)).

Although JBTS's expert contends that "powerful" computers are needed to support the "[t]housands, if not millions of credit card purchases . . . made daily from merchant locations across the country," A0544; Blue Br. 43, neither the '003 patent nor the '270 patent describes or claims anything of the sort. *See* A0021-22 (stating that the powerful computer requirement "is nowhere in the patents"). Rather, the Asserted Claims recite a generic "processor" or a "processing device"

that processes a *single* transaction. A0156 [71:10-11] ("a processor for processing *a* transaction on the electronic money account" (emphasis added)); A0213 [55:24-26] ("a processing device, wherein the processing device processes *an* authorization request for a transaction on the account" (emphasis added)).

JBTS asserts that the "Asserted Claims expressly recite very specific computers," Blue Br. 42, and the "central processing computer cannot be a generic computer," *id.* at 35 (citation omitted). But the specification disagrees, disclosing a "central processing computer" that may be "a mainframe computer, a mini-computer, a micro-computer, a server computer, . . . and/or any other suitable computer or computer system." A0192 [13:66-14:3]; A0128 [15:54-58]. The central processing computer includes generic components, such as "RAM," "ROM," a "display device," an "input device," and other basic hardware ubiquitous in computers. A0129 [17:36-45]; A0193 [15:45-53]. And the central processing computer does not run "custom software," Blue Br. 35 (citation omitted); it runs "any of the widely known data processing and/or software routines, which are known to those skilled in [the] art, in order to process transaction requests and/or authorizations." A0194 [17:26-29]; A0130 [19:21-24].

Moreover, JBTS's argument is contrary to its own proposed claim construction that "[c]entral transaction processing computer" encompasses a "processing device which can process data or information regarding *a transaction*

32

or transactions for or regarding *one* or more accounts or for or regarding a group of accounts." A0654 (emphases added). Any general-purpose computer could process "a" transaction for "one" account.

JBTS's reference to "FFIEC guidelines" and use of buzzwords, such as "layered security," "single-factor authentication," and "out-of-band verification," Blue Br. 34, 36-37, are likewise untethered to the claim language and do nothing to make its claimed "processor" and "processing device" into "something more." Indeed, JBTS unsuccessfully relied on these same buzzwords in the *Jack Henry* appeal. JBTS JH Br. 11-12. JBTS also refers to "multiple simultaneous connections required with various account holder communications devices," Blue Br. 43—a feature found nowhere in the claims.

The district court correctly concluded that "the factual dispute [JBTS] identifies regarding what was conventional in computers in 1996 turns out to be a straw man, since the dispute only exists if one accepts that the 'powerful' computers described by [JBTS's] expert are actually recited in the patents." A0022. The Asserted Claims recite what they recite: generic computer components.

### c)   Conclusory Expert Statements and Field-of-Use Limitations Do Not Preclude Summary Judgment

Because the claims and specification tell a different story, JBTS is forced to rely on conclusory expert testimony. JBTS alleges, for example, that the

"transaction authorization device" (claim 138) and "network computer" (claim 117) are "undisputedly limited to non-generic computers and thus pass Step 2 of the *Mayo/Alice* Test." Blue Br. 44. However, the only evidence that JBTS can muster to support its assertion that the "transaction authorization device" is non-generic is a citation to an expert declaration that has one conclusory statement: "[The transaction authorization device], too, is a specialized device and not a generic computer." A0549. And even this statement contradicts the specification. *See*, *e.g., supra* § III.A. JBTS points to no evidence supporting its assertion that a "network computer" is non-generic, nor could it. None of this evidence is sufficient because "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008).

JBTS next relies on field-of-use arguments. JBTS contends that the claimed "receivers" and "transmitters" are not generic because "they must be capable of communicating on or over the Internet or World Wide Web." Blue Br. 43-44. However, "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures I*, 792 F.3d at 1366. And, "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101."

*Ultramercial*, 772 F.3d at 716 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011)).

### D. This Case Is a Rerun of the *Jack Henry* Appeal in Which This Court Summarily Affirmed the Invalidity of JBTS's Claims

This case represents JBTS's second attempt to salvage its patent-ineligible "inventions." As noted by the district court, "many of the claims asserted here are dependent upon independent claims invalidated in *Jack Henry*," and "[t]he remaining Asserted Claims are susceptible to the same analysis." *See* A0014 n.11. FIS's summary judgment filing included charts demonstrating how the features from the Asserted Claims are all found in the invalidated *Jack Henry* claims. A0325; A0378; A0625-50.

JBTS concedes that the "result of the *Jack Henry* Matter must be acknowledged," Blue Br. 24, but argues that *Jack Henry* is not dispositive in this case, *id.* at 53-54, and that the Asserted Claims here "include additional limitations and components from the claims in the *Jack Henry* Matter," *id.* Yet JBTS does not identify any "additional limitations." Instead, for both *Jack Henry* and this appeal, the claim limitations, the district courts' analyses, and the district courts' conclusions are the same. *See* A0325; A0378; A0625-50; A0021 ("The Court agrees with [FIS] and the *Jack Henry* court that, whether viewed individually or as an ordered combination, the elements of the Asserted Claims add nothing inventive to the abstract idea such that it would grant them patent eligibility under § 101.");

*id.* ("The Court further agrees with the *Jack Henry* court that the requirement of specialized computer components created by [JBTS's] expert finds no support in the patents themselves."); A0023 n.16 ("The Court agrees with the *Jack Henry* court that 'this argument turns the analysis on its head.'" (citation omitted)).

Even JBTS's arguments on appeal are the same as those that failed in the *Jack Henry* appeal:

| JBTS's Arguments in This Appeal | JBTS's Arguments in the *Jack Henry* Appeal |
|---|---|
| "By inserting yet a different abstract idea in its opinion, ***JBTS did not have the opportunity to respond*** to, and address the new purported abstract idea proposed by the district court." Blue Br. 25 (emphasis added). | "The district court's failure to identify an abstract idea has ***deprived Appellant of the opportunity on appeal to respond*** to the particular abstract idea for which its claims were invalidated." JBTS JH Br. 25 (emphasis added). |
| "The same 2011 ***FFIEC guidance*** recommended 'the use of out-of-band verification for transactions,' which means that 'a transaction that is initiated via one delivery channel (e.g., Internet) must be re-authenticated or verified via an independent delivery channel (e.g., telephone).'" Blue Br. 37 (citations omitted). | "The same ***FFIEC guidance*** recommends 'the use of out-of-band verification for transactions,' which 'means that a transaction that is initiated via one delivery channel (e.g., Internet) must be re-authenticated or verified via an independent delivery channel (e.g., telephone).'" JBTS JH Br. 38 (citations omitted). |
| "There are also ***simple ways to avoid infringing*** the Asserted Claims . . . . For example, a bank could communicate with its account holders in person, by mail, or over the telephone without infringing or via other non-infringing electronic means." Blue Br. 41 (emphasis added). | "The asserted claims are narrowly drawn, and there are ***simple ways to avoid infringing*** them. For example, a bank could obviously communicate with its account holders in person, by mail, or over the telephone without infringing any of the asserted claims." JBTS JH Br. 45 (emphasis added). |

| | |
|---|---|
| "The Asserted Claims expressly recite *very specific computers*. . . . [T]he claimed processor/processing device consists of the hardware components (CPU, RAM, ROM, Database) and software of the central processing computer which 'utilizes, generates, authorizes, disallows and determines what is done with transactions and information about transactions.'" Blue Br. 42-43 (emphasis added) (citation omitted). | "Here, the asserted claims expressly recite *very specific computers*. . . . [T]he claimed processing device consists of both the hardware components (CPU, RAM, ROM, Database) and software of the central processing computer which 'utilizes, generates, authorizes, disallows and determines what is done with transactions and information about transactions.'" JBTS JH Br. 50 (emphasis added) (citation omitted). |
| "Moreover, Appellee's motion focused exclusively on these components, and entirely *fails to consider the 'ordered combination' of the limitations of the asserted claims* as required by the Supreme Court." Blue Br. 45 (emphasis added). | "Moreover, the district court erred in focusing exclusively on individually-recited computer components, and entirely *failed to consider the 'ordered combination' of the limitations of the asserted claims* as required by the Supreme Court." JBTS JH Br. 51 (emphasis added). |
| "Finally, the asserted claims recite *a number of technologies that were far from conventional in 1996*. For example, it was not at all conventional in 1996 for a bank's memory device to automatically accept a limitation or restriction directly from an account holder's communications device." Blue Br. 46-47 (emphasis added). | "Finally, the asserted claims recite *a number of technologies that were far from conventional in 1996*. For example, it was not at all conventional in 1996 for a bank's central processing computer to automatically accept a limitation or restriction sent from a communication device . . . ." JBTS JH Br. 54 (emphasis added). |
| "At the very least, the *evidence of record presents disputed questions of fact* about what was and was not conventional as of August 8, 1996." Blue Br. 47 (emphasis added). | "At the very least, the *evidence of record presents disputed questions of fact* about what was and was not conventional as of August 8, 1996." JBTS JH Br. 56 (emphasis added). |

| | |
|---|---|
| "The district court's grant **entry of Judgment for FIS and against JBTS with respect to infringement should thus be vacated** regardless of the outcome of the validity issues in the present appeal." Blue Br. 59 (emphasis added). | "The district court's **grant of summary judgment of noninfringement** to Appellee and denial of partial summary judgment of infringement to Appellant **should thus be vacated** regardless of the outcome of the validity issues in the present appeal." JBTS JH Br. 58 (emphases added). |

JBTS itself requested a stay of the district court action pending the resolution of the *Jack Henry* appeal, A0004 n.5, and that resolution forecast the district court's decision here. The Asserted Claims are invalid.

### E.    The District Court Correctly Applied Controlling Precedent and Afforded JBTS Adequate Due-Process Safeguards

JBTS's due-process argument, Blue Br. 55-58, fails from the outset. "[I]t is unambiguously clear that federal judicial proceedings, with their extensive notice, opportunity to be heard, and procedural protections, satisfy the constitutional requirement of procedural due process required for the invalidation of a patent." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1565 (Fed. Cir. 1988). JBTS contends that the district court's opinion "is a violation of the Due Process Clause of the United States Constitution," Blue Br. 55, but it fails to explain how it was denied a full and fair hearing of its rights. JBTS had adequate opportunity to be heard and did not identify any procedural defect violating due process.[9]

---

[9] To the extent JBTS suggests that the invalidation of its patents is an unconstitutional taking, Blue Br. 15, this argument fails. "Since the adoption of the

(continued on next page)

JBTS attacks the *Mayo/Alice* test as "arbitrary" and "lacking in rigor." Blue Br. 55-56. Yet, scores of cases from this Court and others have successfully applied the test without issue. *See OIP Techs.*, 788 F.3d at 1362 ("Under the now familiar two-part test described by the Supreme Court in *Alice,* '[w]e must first determine whether the claims at issue are directed to a patent-ineligible concept,' such as an abstract idea." (alteration in original) (quoting *Alice*, 134 S. Ct. at 2355)); *Intellectual Ventures I*, 792 F.3d at 1366-71; *buySAFE*, 765 F.3d at 1352; *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A*., No. 8:11-cv-2826-T-23TBM, 2014 WL 4540319 (M.D. Fla. Sept. 11, 2014); *MyMedicalRecords, Inc. v. Walgreen Co*., No. 2:13-cv-00631-ODW (SHx), 2014 WL 7339201, at *2-5 (C.D. Cal. Dec. 23, 2014); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 840 (E.D. Tex. 2014); *Tuxis Techs., LLC v. Amazon.com, Inc*., No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014); and *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014).

JBTS raises several "open questions," Blue Br. 56-57, asking, for example, whether district courts know how to identify an abstract idea or determine what is

---

(continued from previous page)
first Patent Act in 1790, Congress has permitted judicial review of the validity of patents." *Constant*, 848 F.2d at 1564.

conventional. *Id.* To the extent that JBTS is trying to rewrite the law based on broad policy issues, the appropriate avenue for relief is with Congress, not with the Federal Circuit. *Cf. BankAmerica Corp. v. United States*, 462 U.S. 122, 140 (1983) ("[W]e are not to rewrite [a] statute based on its notions of appropriate policy."); *Parker v. Flook*, 437 U.S. 584, 595 (1978) ("Difficult questions of policy concerning the kinds of programs that may be appropriate for patent protection and the form and duration of such protection can be answered by Congress on the basis of current empirical data not equally available to this tribunal."). Moreover, this case fits squarely within this Court's precedent—application of the "now familiar" *Mayo/Alice* test to the Asserted Claims. *OIP Techs.*, 788 F.3d at 1362.

### F.    JBTS's Arguments Concerning Infringement Are Moot

JBTS asserts the district court erred in granting summary judgment of noninfringement, but admits that invalidity—which the district court did address— "is a defense to liability." Blue Br. 59 (citation omitted). Because invalidity operates as a complete defense to liability for infringement for any product of any defendant, JBTS is not and cannot be harmed by the district court's judgment purporting to rule on JBTS's infringement claims. Indeed, there is no need to vacate the ruling because "a judgment of invalidity necessarily moots the issue of infringement." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004); *see also Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d

1348, 1365 (Fed. Cir. 2008) (construing a district court's ruling as intending to dismiss an infringement claim in light of the court's ruling on invalidity). Thus, this Court need only address the district court's ruling on infringement if the invalidity determination is reversed.

## VII.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For these reasons, the district court should be affirmed.


Date: January 11, 2016                    Respectfully submitted,


 /s/Erika H. Arner
Erika H. Arner
Daniel C. Cooley
Brandon S. Bludau
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700

Deborah G. Segers
FIDELITY NATIONAL INFORMATION
 SERVICES, INC.
601 Riverside Avenue, Tower, 12th Floor
Jacksonville, FL 32204
(414) 357-2209

*Attorneys for Defendant-Appellee Fidelity*
*National Information Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on January 11, 2016, this BRIEF OF APPELLEE FIDELITY

NATIONAL INFORMATION SERVICES, INC., was filed electronically using

the CM/ECF system and served via the CM/ECF system on registered counsel.


/s/Donna Stockton

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing BRIEF OF APPELLEE FIDELITY NATIONAL

INFORMATION SERVICES, INC., contains 9,531 words as measured by the

word-processing software used to prepare this brief.

Respectfully submitted,

Date: January 11, 2016                    /s/Erika H. Arner

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP