No. 2015-1956

IN THE
**UNITED STATES COURT OF APPEALS**
FOR THE FEDERAL CIRCUIT

---

JOAO BOCK TRANSACTION SYSTEMS, LLC

*Plaintiff-Appellant,*

v.

FIDELITY NATIONAL INFORMATION SERVICES, INC.,

*Defendant-Appellee.*

---

**Appeal From The United States District Court
For The Middle District of Florida In Case No. 3:13-cv-00223-J-32JRK,
Honorable Timothy J. Corrigan**

---

**JOAO BOCK TRANSACTION SYSTEMS, LLC'S
REPLY APPELLATE BRIEF**

---

STEVEN W. RITCHESON
Insight PLC
9800 D Topanga Canyon Blvd., #347
Chatsworth, California 91311
(818) 882-1030

MAUREEN V. ABBEY
HENINGER GARRISON DAVIS, LLC
220 St. Paul Street
Westfield, New Jersey 07090
(908) 379-8475

*Attorneys for Plaintiff-Appellant, Joao
Bock Transaction Systems, LLC*

February 18, 2016

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant, Joao Bock Transaction Systems, LLC, certifies the following:

1.      The full name of every party or amicus represented by me is:

> Joao Bock Transaction Systems, LLC (Plaintiff-Appellant)

2.      The name of the real party in interest represented by me is:

> Joao Bock Transaction Systems, LLC (Plaintiff-Appellant)

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me is:  None.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the district court or agency or are expected to appear in this Court are:

- Heninger Garrison Davis, LLC: Steven W. Ritcheson (currently with Insight PLC), Joseph J. Gleason (no longer with firm) Maureen V. Abbey, Timothy C. Davis, Jacqueline K. Burt, Jonathan R. Miller, M. Blair Clinton, Joseph Gabaeff (no longer with firm)
- Stamoulis & Weinblatt LLC: Stamatios Stamoulis, Richard C. Weinblatt

DATED: February 18, 2016

Respectfully submitted,
**HENINGER GARRISON DAVIS, LLC**

*/s/ Maureen V. Abbey*
Maureen V. Abbey
*Attorneys for Plaintiff-Appellant, Joao Bock Transaction Systems, LLC*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................................i

**TABLE OF AUTHORITIES** .............................................................**4**

**STATEMENT OF RELATED CASES - SUPPLEMENT** ...................................**1**

**SUMMARY OF ARGUMENT** .........................................................**2**

**ARGUMENT** ..........................................................................**3**

**I.     THE ASSERTED CLAIMS ARE PATENT-ELIGIBLE UNDER
CONTROLLING LAW** ...........................................................**3**

    *A.     The Asserted Claims Are Directed To Improved Transaction
Processing Technology; The Asserted Claims Create A New Network That
Substantially Improves on Pre-Existing Systems* ...........................................*4*

        1.     The Ordered Combination Of Each Claim Is Directed To An
Improved Network And A New Technological Improvement For
Processing Electronic Transactions .............................................................5

        2.     The Ordered Combination Analysis Of Claims 1 And 9 Of The '270
Patent Meets The 101 Requirements And Is Patent Eligible.........................7

        3.     The Ordered Combination Analysis Of Each Dependent Asserted
Claim Of The '270 Patent Meets The §101 Requirements And Renders The
Claim(S) Patent Eligible ............................................................................12

        4.     Claim 3 Of The '270 Patent Is Not Representative Of The Asserted
Claims. ......................................................................................................14

        5.     Claim 104 Of The '003 Patent Is Not Representative Of The Asserted
Claims. ......................................................................................................15

    *B.     Step 1 Identification Of The Abstract Idea Impacts Step 2 Analysis*....*17*

    *C.     The Asserted Claims Do Not Preempt The Field* .................................*19*

    *D.     The Asserted Claims Are Distinct And Different* .................................*19*

    *E.     The Inventions Are Patentable And Distinct* ........................................*20*

    *F.     Recent Developments In Federal Circuit Law*.......................................*21*

    *G.     The Jack Henry Action Raised More Questions Than It Answered* ....*23*

    *H.     FIS's Due Process Discussion Involves Circular Logic And Ignores
JBTS's Arguments* .......................................................................................*23*

1.    An Arbitrary Test Violates Due Process .............................................25

2.    The First Step Of The *Mayo/Alice* Test Is The Only One That Appears To Matter.....................................................................................................26

**II.    ENTRY OF SUMMARY JUDGMENT OF NO INFRINGEMENT WAS IMPROPER** ............................................................................28

**III.    CONCLUSION** ....................................................................................29


CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013)...................25

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. __, 134 S.Ct. 23475, 189 L.Ed.2d 296 (2014)................................................................................. 8, 18, 20

*Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. __, 135 S.Ct. 1920, 191 L.Ed.2d 883 (2015)......................................................................................29

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988) .........24

*Diamond v. Diehr*, 450 U.S. 175 (1981).................................................................18

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).............29

*Fla. Prepaid Postsec. Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627 (1999)........................................................................................................25

*In re Comiskey*, 554 F.3d 967 (Fed. Cir. 2009) ....................................................27

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015) ........................................................................................................27

*Le Roy v. Tatham,* 14 How. 156, 14 L.Ed. 367 (1852);..........................................29

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U. S. __, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012) ...................................................19

*McRO, Inc. v. Namco Bandai Games America, Inc.*, Case No. CV 12–10322–GW (FFMx), 2014 WL 4749601 (C.D. Cal. Sep. 22, 2014), appeal pending, Case No. 2015-1080 (Fed. Cir. argued Dec, 11, 2015).........................................27

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) .....................................28

*Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, Case No. 2015–1415, 2016 WL 362415 (Fed. Cir. Jan. 20, 2016, *errata* issued Jan. 28, 2016) ............23

*O'Reilly v. Morse*, 15 How. 62, 14 L.Ed. 601 (1853) .............................................29

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir.1985) ..................................25

*Patlex Corp. v. Mossinghoff*, 771 F.2d 480 (Fed. Cir. 1985) ................................25

*TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151 (Fed. Cir. 2004) ...29

*Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*, Case No. No. 2015–1411, 2015 WL 9461707 (Fed. Cir. Dec. 28, 2015) ............................. 8, 22

*Voxathon LLC v. Alpine Electronics of America, Inc.*, Case No. 2:15-cv-562-JRG, 2016 WL 260350 (E.D. Tex. Jan. 21, 2016) ........................................................28

*Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326 (Fed. Cir. 1998) ...............29

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ...............................................................26

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348 (Fed. Cir. 2008)...29

## Statutes

35 U.S.C. §101 .......................................................................................... 4, 24, 26

35 U.S.C. §112 .................................................................................................27

35 U.S.C. §282(a) .............................................................................................28

REPLY APPELLATE BRIEF

## STATEMENT OF RELATED CASES - SUPPLEMENT

Pursuant to Federal Circuit Rule 47.5, Plaintiff-Appellant provides as follows:

(a) There are no previous appeals in this case.

(b) Plaintiff-Appellant is aware of the following pending district court cases in which it is asserting U.S. Patent Nos. 6,047,270 and/or 7,096,003 that may be affected by the Court's decision in this case:

- *Joao Bock Transaction Systems, LLC v. Online Resources Corp.*, No. 8:13-cv-00245-JFB-TDT (D. Neb.) [dismissed on February 1, 2016]

- *Joao Bock Transaction Systems, LLC v. Harland Financial Solutions, Inc.*, No. 1:13-cv-04223-WWE (S.D. N.Y.)

- *Joao Bock Transaction Systems, LLC v. Regions Bank*, No. 2:14-cv-00749-AKK (N.D. Ala.) [currently stayed]

- *Joao Bock Transaction Systems, LLC v. Capital One Financial Corp., Capital One Bank (USA), N.A.; Capital One, N.A.,* No. 1:14-cv-00425-SLR (D. Del.) [currently stayed]

- *Joao Bock Transaction Systems, LLC v. General Electric Capital Corp.,* No. 1:14-cv-00529-SLR (D. Del.) [currently stayed]

- *Joao Bock Transaction Systems, LLC v. TradeKing Group, Inc.,* No. 1:14-cv-00530 (D. Del.) [currently stayed]

## SUMMARY OF ARGUMENT

FIS's ignores the details of the Asserted Claims and the patents that disclose a new network that improves on the prior art technology. The Asserted Claims build upon the alleged abstract idea of notifying, monitoring, or setting limits for transaction(s) or account(s). There was no layered security for electronic transactions in 1996. While many saw the potential of the Internet for business, no one was doing business on the Internet in 1996 because it was not secure. It was also cost-prohibitive and challenging to implement. Others failed in their attempts. The Internet was nicknamed the "information superhighway" because people shared information. No one trusted the Internet with personal data, financial information, or other sensitive data because there was no security for it. The Asserted Claims provided a layered security, which the FFIEC acknowledged as the new security standard years later. The industry resisted the change – adding weight to the improved technology of the Asserted Claims. This new technology required investment in hardware and software and technical consultants to establish the new network.

It is not the specification, but the claims that define the scope of the invention(s) and the scope of each patent. FIS's discussion of the specifications to equate the scope of the '270 to that of the '003 Patent is incorrect. FIS also fails to consider the claims as an ordered combination – again comparing elements to

elements – out of context of the claims as a whole. This incorrect analysis misconstrues the claims and results in the incorrect conclusion of patent ineligible subject matter.

FIS's arguments are not supported by facts, and ignore the plain language of the claims. Further, the court made credibility determinations, and weighed the evidence against JBTS – the non-moving party. This is clear error.

## ARGUMENT

## I. THE ASSERTED CLAIMS ARE PATENT-ELIGIBLE UNDER CONTROLLING LAW

There are bad patents out there, the existence of which was the impetus for patent reform efforts of the last decade. However, the JBTS patents are not part of that problem. The Asserted Claims of the JBTS Patents-in-Suit are different. The Asserted Claims are an improvement in prior art technology and directed to an apparatus that never before existed. FIS oversimplified the claims and the patents, stripping the claims in a disconnected analysis that does not consider the claims as a whole. Neither the district court, nor FIS, has performed an analysis of the "ordered combination" of claim elements in the claim as required to analyze an issued patent claim to determine whether it is directed to unpatentable subject matter under 35 U.S.C. §101. It is essentially a litigator's manipulation of language rather than what the claims actually state. FIS's over simplification glosses over important differences between the claimed inventions.

## A. <u>The Asserted Claims Are Directed To Improved Transaction Processing Technology; The Asserted Claims Create A New Network That Substantially Improves on Pre-Existing Systems</u>

The Asserted Claims are directed to machines that create a new combination of technology to create a new network that did not previously exist. In 1996, there was no direct access for the account holder to control or manage an account. There was no immediate or real-time transaction processing and notification to the account holder. It was only with layered technology of the Asserted Claims that these networks were conceived, created and put in use. Years later, the industry adopted the technology – a testament to the benefits of the new network set forth in the Asserted Claims.

Prior art systems were unable to provide this same level of security for transactions.  Nor did prior art systems communicate in this same way. The activity performed over the new network is not so important, it is the network, and who it connects and how it operated that is novel and new. The notifications can be sent "independently" of processing of the transaction.  The notifications can be sent "in real time" and can be sent to an email address.   In other claims, the central processing computer receives limitations from the account holder and uses that information in processing transactions. These improvements enable an account holder to limit fraud on the account through use of the limitations or restrictions. These and other technology improvements help the account holder to identify

fraudulent (or erroneous) account activity more quickly, react to the information by timely disapproving or approving transactions and account activity, thereby reducing fraud while the transaction is being processed. The prior art systems did not do this.

1.  The Ordered Combination Of Each Claim Is Directed To An Improved Network And A New Technological Improvement For Processing Electronic Transactions

The Asserted Claims create a new network that was 10-15 years ahead of its time, as evidenced by the FFIEC Supplement (and related letters from the FDIC). Appx0608-Appx0622. The Asserted Claims do not simply recite steps for a process and then add 'do it on a computer.'

The Asserted Claims are directed to an improvement in the prior art technology for securely processing transactions and account activity. See Opening Brief, at 33-36. The prior art's "rudimentary security practices"[1] left a void in security for transactions on the Internet, leaving the financial industry leery of engaging in Internet-based business transactions.[2] See Opening Brief at 4-6, 33-36.

The Asserted Claims improved (prior art) technology because it created new communication channels to the account holder. New hardware and software was

---

[1] The prior art security was limited to passwords, encryption and firewalls.
[2] The prior art security for electronic transactions and electronic accounts only limited access to an account. The FFIEC Supplement explains shortcomings of prior art systems, and teaches the inventions of the Asserted Claims. The FFIEC and FDIC letters and publications teach layered security.

required to be installed at the financial centers, installed and used by transaction processing entities, and used by an account holder in order for this new network to be created and to operate.  <u>See</u> Opening Brief at 4-5 (<u>discussing</u> Lawlor and "[t]he cost of technology and training people how to use the technology were also prohibitive.") (Appx0718-Appx0795)  The Asserted Claims improved on communications channels between entities involved in transaction processing, and created a channel between the account holder and his financial institution(s).  This did not exist in 1996.  Prior art security merely safeguarded access to the account. Access could be obtained by stealing credentials[3] and using the account without the owner's knowledge or authorization with prior art "rudimentary security practices."   With the new network of the Asserted Claims, the unauthorized activity is detected by the apparatus. The apparatus generates a signal and transmits it to a communication device providing information on the activity to the account owner promptly. This and other operations of the apparatus (data processing of limits on account, generation and transmission of signals, notifications) create a layered security so that the financial institution(s) and the account owner(s) can take action during transaction processing.

---

[3] Credentials are username and password.

This new network provided tools for the account holder and the financial institution to share information while monitoring the transactions and the account. This account holder provided input directly to the apparatus for managing accounts (limits or restrictions on use), for authorizing activity, and for detecting fraud or error in transaction processing. The improved technology allowed the account holder to intervene in the transaction if it was incorrect or unauthorized. This new network was based on new technology (hardware and software) for transaction processing.

2. <u>The Ordered Combination Analysis Of Claims 1 And 9 Of The '270 Patent Meets The 101 Requirements And Is Patent Eligible</u>

Both claims 1 and 9 of the '270 Patent are patent eligible because they are directed to this new network.  Under the *Mayo/Alice* framework, the Court looks to whether the claim(s) "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*, Case No. No. 2015–1411, 2015 WL 9461707, *2 (Fed. Cir. Dec. 28, 2015) (<u>quoting</u> *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. __, 134 S.Ct. 2347, 2355, 189 L.Ed.2d 296 (2014)). "This step requires examining the elements of each claim both individually ***and as an ordered combination***." <u>Id</u>. (emphasis added). There has been no analysis of any of the Asserted Claims as an ordered combination. It is through this analysis that the new network defined in the Asserted Claims is understood. Analyzing separate claim

elements alone, results in an incorrect outcome because it is based on an incomplete analysis. Each Asserted Claim, when read as an ordered combination, is directed to a new, improved technology for account security ('270 Patent) and transaction security ('003 Patent).

## **The Ordered Combination Analysis of the Claims**

### **Claim Element A** in the Ordered Combination Analysis of Claims 1 or 9.

Examining claims 1 and 9 of the '270 Patent as an ordered combination starts with a computer system (apparatus or method):

> **[receiving] one of a limitation and a restriction on usage of an electronic money account, wherein said one of a limitation and a restriction are received from an account holder**

This first **Claim Element A** of claim 1 (and 9) is directed to a computer system for processing transactions that receives instructions electronically from an account holder.  The prior art solutions do not include a network that provides for the account holder to send instructions on parameters of usage of an electronic money account in this same way.  This is best described in detail in the specification of the '270 Patent (16:24-40, Appx0128; 67:65-69:22, Appx0154-Appx0155).

> The cardholder may program the central processing computer, and/or the server computer, if utilized, via the communication device (67:65-67, Appx0154);

> The cardholder may also perform the above-described programming via a touch-tone telephone. (68:1-3, Appx0154)

> The cardholder may program the apparatus so as to limit the types of transactions…(68:3-5, Appx0154)
>
> The central processing computer 203 also comprises a receiver(s) 203G for receiving signals and/or data … from the communication device 204 [of the account owner].[4]
>   ('270 Patent, 34:9-16; 33:47-53; 26:1-7, Appx0137, Appx0133).

The disclosure is specific as to defining the direct communication between account holder and financial institution.  The specification of the '270 patent details how processors, receiver(s), communication device(s), and other computer components are configured to communicate (in a new way), and specially programmed to provide improvements in managing account activity, and improved detection of fraud or error in electronic transactions.  This new network enabled the account holder to program the central processing computer to directly control his/her electronic account through this network. This is completely new and not disclosed in, or taught by prior art systems.

**Claim Element B** in the Ordered Combination Analysis of Claims 1 or 9.

The next step in this analysis of the ordered combination proceeds to the next (second) claim element:

**[Storing] said one of a limitation and a restriction**

---

[4] Prior art systems for transaction processing and managing accounts were not accessible to account owners.  In the prior art systems, the account owner had to walk into the bank and meet with a bank representative to manage the account. Cheng Decl. 42, Appx0491-Appx0492.

The specification describes the memory and storage of the limitation and/or restriction received by the central processing computer from the account holder. (Fig. 8; 33:58-62, Appx0137, Appx0100).

> The central processing computer 203 also comprises a database(s) 203H which contains account information and data pertaining to the account owner's account(s). The database 203H contains information about the account owner, the account number, etc., and any other information and/or data necessary to manage and/or process an account and/or account transaction as described herein. The database is also connected to the CPU 203A. (34:16-24, Appx0137; see also 26:8-16, Appx0133).

The specification discloses random access memory 20B (RAM and read only memory 204C (ROM devices, which are also connected to the CPU 204A. (270 Patent, col. 34:29-33, Appx0137, Fig. 8, Appx0100). The apparatus includes memory for storing a limitation and/or a restriction on the account.

**Claim Element C** in the Ordered Combination Analysis of Claims 1 or 9.

The next step in the ordered combination analysis of claims 1 and 9 proceeds to the next (third) claim element:

> **[Processing] a transaction on the electronic money account in conjunction with said one of a limitation and a restriction;**

The specification describes this processing in detail, which was completely new and not performed by prior art systems. ('270 Pat., 35:30-57, Appx0138; Figs. 9A, 9B, 9C, Appx0101-Appx0103; Figs. 6A, 6B and 6C, Appx0097-Appx0099; 26:58-27:38, Appx01330.

The central processing computer 103 will then, at step 133, process the information and/or data pertinent to the transaction and to the particular account. '270 Pat., 27:14-21; see also 26:58-64, Appx0133.

[T]he central processing computer 103 will then perform a test, at step 134, in order to determine … whether any other pre-defined, pre-selected and/or programmed limitation (s) and/or restriction(s) have been met, satisfied and/or reconciled. ('270 Pat. 27:27-34, Appx0134) (discussing Figs. 6A, 6B and 6C; see also 35:44-53, Appx0138; Figs. 9A, 9B, 9C).

The specification discloses the central processing computer using pre-defined limits and other programmed limitations or restrictions set by the account owner. These limits are used by the apparatus when processing a transaction on an account. This improves transaction processing security because it includes special programming entered by the account owner with his communication device. This claim element is an improvement to prior art systems.

**Claim Element D** in the ordered combination of Claims 1 or 9.

The next element of claim 1 and 9 in this analysis of the ordered combination proceeds to the next (fourth) claim element:

**[generating] a first signal, wherein said first signal contains information for one of approving and disapproving the transaction.**

The specification describes one embodiment of the invention wherein

At step 134, the central processing computer 103 determines that the account … has not reached a predefined limit, and/or that pre-defined or pre-specified limitations and/or restrictions have been met, the central processing computer 103 will, at step 138, transmit a signal

and/or data to the communication device 104 which is located at the account owner. ('270 Pat., 28:12-20, Appx0134).

The central processing computer 103 generates a signal and transmits it to the account holder for one of approving or disapproving the transaction.

> The apparatus 100, at step 140, will then wait for the account owner to respond to the transmission. … the account owner may either … approve or authorize the transaction or disapprove of, or void, the transaction. ('270 Pat., 28:57-67, Appx0134).

The ordered combination of Claim Elements A – D creates a new computer system at the financial institution and which is used by the account owner that communicates and sends data over the new network, thereby including the account owner in the transaction processing, and including the account owner in the approval or disapproval step of transaction processing, and including the account owner in the monitoring of activity.  The technology at the time of the invention did not have a network that did this.  The Asserted Claims, when analyzed as an ordered combination, provide layered security to detect fraud and error _**while a transaction is being processed**_. Any other outcome focuses fails to acknowledge the claim language as an ordered combination.

> 3. The Ordered Combination Analysis Of Each Dependent Asserted Claim Of The '270 Patent Meets The §101 Requirements And Renders The Claim(S) Patent Eligible

The ordered combination analysis of each of the Asserted Claims proves that they are not merely directed to an abstract idea, nor do the Asserted Claims just

apply new steps to a generic computer. These Claims create a new network, and new steps in how electronic transactions are processed, and new steps in how account information is collected, stored and used in processing a transaction on an electronic account. For example, claim 3 of the '270 Patent adds on to claim 1 a transmitter for transmitting a notification signal, as set forth below.  This claim 3 improves on prior art systems which did not generate and transmit signals to a communication device associated with the account holder.

| Claim 3 of the '270 Patent | Support in specification |
|---|---|
| The apparatus of claim 1, further comprising **a transmitter for transmitting a notification signal to a communication device associated with the account holder**, wherein the communication device is one of a device for receiving said notification signal, a telephone, a beeper, a pager, a two-way pager, a reply pager, a home computer, a personal computer, a personal communication device, a personal communication services device, a digital communication device, a television, an interactive television, a digital television, a personal digital assistant, a display telephone, a radio, a car radio, a video telephone, a watch, a cellular telephone, a wireless telephone, a mobile telephone, a display cellular telephone, and a facsimile machine. | **"The central processing computer 103 also comprises a transmitter(s) 103F for transmitting signals and/or data** to the banking device 102 and **to the communication device 104**…" ('270 Pat., 25:59-62, Appx0133). See 16:8-23, Appx0128.<br><br>**"[T]he central processing computer 103 will, at step 138, transmit a signal and/or data to the communication device 104** which is located at the account owner." ('270 Pat., 28:18-20, Appx0134).<br><br>See also, '270 Pat., 28:21-56, Appx0134. ("**At step 138, the central processing computer 103 will then also transmit respective signals and/or data to … the cardholder's** designated fax machine 105, personal computer or personal digital assistant 106, telephone 107, telephone answering machine 108, alternate telephone 109, alternate telephone answering machine 110, network computer 111, …"). |

Claim 3, and the specification of the '270 Patent, disclose a new network that provides for the central processing computer to transmit a notification signal to the wireless communication device so that the cardholder be kept apprised of activity on his account at any time.  See '270 Pat., 16:41-47; 16:8-24, Appx0128.

>    4.  Claim 3 Of The '270 Patent Is Not Representative Of The Asserted Claims.

The remaining Asserted Claims of the '270 Patent define distinct, patent-eligible inventions.  Claim 49 has different elements that must be considered in its own Ordered Combination Analysis.

> said processor processes said transaction one of data and information and generates a transaction record, wherein said transaction record contains information regarding transaction activity occurring on the account during one of a time period and a time interval, and further wherein said apparatus further comprises:
>
> a transmitter for transmitting said transaction record one of to the account holder and to a communication device associated with the account holder.

The new network of Claim 1 (from which claim 49 depends) "generates a transaction record" and includes "a transmitter for transmitting said transaction record" to the account holder or his communication device. See '270 Pat., 66:18-36, Appx0153. The new network transmits the transaction record to the account holder or his communication device "at any time." Id. at 16:41-47, Appx0128. Prior art systems did not do this.

Claim 19 differs from Claim 1 because it discloses a processor processing a first signal and a second signal, and a transmitter for transmitting the second signal. Claim 20 discloses a receiver that receives a first signal which is not the same as the receiver of Claim 1. The claim language in Claim 1 described the receiver as receiving a limitation or restriction from the account holder. Claim 20 discloses a receiver for receiving a first signal regarding a transaction on an electronic money account. The receivers of these two claims are different – they interface with different parts of the network and are not the same claim element(s). Claim 21 adds "an input device" for inputting the first signal into the apparatus. This, too, is not disclosed in Claim 1 or 3. Claim 28 further adds a display device to the communication device. Claim 51 adds a processor that "generates a transaction record" and "a transmitter for transmitting said transaction record" to the account holder. Here again, Claim 3 fails to be representative of the Asserted Claims. An analysis of the ordered combination of claim elements unequivocally demonstrates the Asserted Claims are directed to a technological improvement in the industry. '270 Pat., Appx0156-Appx0160.

> 5. <u>Claim 104 Of The '003 Patent Is Not Representative Of The Asserted Claims.</u>

Claim 117 of the '003 Patent includes

> a transmitter, wherein the transmitter transmits an **electronic mail message** to at least one of a network computer, the communication device, and a second communication device associated with the

individual account holder, wherein the electronic mail message contains information regarding the transaction.

Claim 135 includes

a transmitter, wherein the transmitter transmits a **periodic transaction record in an electronic mail message** to at least one of a network computer, the communication device, and a second communication device associated with the individual account holder, wherein the periodic transaction record shows a transaction or transactions on the account for a time period…

Claim 138 depends from Claim 137 which is different from Claim 102 and

includes a "transaction authorization device". Claim 138 further includes

a transmitter for transmitting a **second signal** to the communication device or to a second communication device associated with the individual account holder, wherein the second signal contains information regarding the transaction.

Claim 148 uses

a transmitter, wherein the transmitter transmits an **electronic mail message** to at least one of a network computer, the communication device, and a second communication device associated with the individual account holder, wherein the electronic mail message contains information regarding the transaction

The "electronic mail message" of Claim 148 is different from the "second signal"

of Claim 138 which is different from the "transaction record" in Claim 135. Claims

102 or 104 do not include any of this language and clearly are not representative of

the other Asserted Claims. The '003 Pat., Appx0164-Appx0227.

The same Ordered Combination Analysis, when applied to the Asserted

Claims of the '003 Patent, demonstrates that the claims are not represented by

claim 104, and are directed to patent eligible invention(s). The Asserted Claims disclose a new transaction security system – a layered security – that uses new network and programming by the account holder to directly manage and control, monitor and authorize or disprove transactions on an account. Each of the independent claims 169, 222 and 317 are directed to a different type of technological improvement. Each of the Asserted Dependent Claims adds to the invention in ways that are not the same as Claim 104 (and independent claim 102) and are not, therefore, represented by these claims. Just as shown in detail for claims 1 and 9 of the '270 Patent, the Asserted Claims of the '003 Patent, when read and analyzed as the Ordered Combination, are patent eligible because they disclose a new network for layered security for transaction processing. The '003 Pat., Appx0164-Appx0227.

## B. Step 1 Identification Of The Abstract Idea Impacts Step 2 Analysis

The *Mayo* Court emphasized that while a patent claim may contain patent-ineligible subject matter, the claim is not unpatentable if the claim does more than simply state the law of nature, natural phenomena or abstract idea "while adding the words 'apply it.'" *Diamond v. Diehr*, 450 U.S. 175, 182 (1981). The abstract idea must be finite because it sets the boundaries by which to measure whether the claims include "something more" that improves on the existing technologies. Without a clearly identified abstract idea, it is impossible to perform Step 2. The

gauge by which to measure any "significant improvement to existing technologies" becomes blurred and impossible to measure. This is exactly what has happened here. FIS identified varying different abstract ideas. The district court then identified a different, broader abstract idea. Each abstract idea sets a different baseline from which to argue that the claims are directed to something more. In this case, the abstract idea became a constantly moving target.

It is in step 2 of the §101 analysis where the Court measures whether the ***claims are "patent eligible [because] they improve[] an existing technological process." Alice,*** 134 S.Ct. at 2358. The application of the *Mayo/Alice* Test below should have concluded after Step 1 with a finding that asserted claims were directed to statutory subject matter, namely a "machine." This was the Court's first error. Instead, the Court proceeded to re-write Defendant's abstract idea, changing the baseline yet again. Dkt. No. 167; Appx0013.[5] The district court downplayed the importance of Step 1: "the various proposals are different only in form, not substance." Dkt. No. 167; Appx0017.[6] This is the overbroad interpretation of §101 that the Court warned about in *Mayo. Mayo Collaborative*

---

[5] The court also proposed different abstract ideas for each patent: "using account holder notifications or account limits to provide security for financial *accounts* (for the '270 Patent)"; and "using account holder notifications or account limits to provide security for financial *transactions* (for the '003 Patent)." Id.
[6] The district court weakens step one of the *Mayo/Alice* Test by stating that identifying the abstract idea does not really matter, contrary to the *Mayo/Alice* Test and arguably a violation of due process.

*Services v. Prometheus Laboratories, Inc.*, 566 U. S. __, 132 S.Ct. 1289, 1289, 182 L.Ed.2d 321 (2012).

### C. <u>The Asserted Claims Do Not Preempt The Field</u>

The Asserted Claims, as discussed in detail <u>supra</u>, are not all directed to the abstract idea of 'using account holder notifications or account limits to provide security for financial accounts and transactions'. The ordered combination analysis of the Asserted Claims defines layered technology – which was a new technology, an improvement in the field of transaction processing, and a new communication channel with the new network. The Asserted Claims do not preempt all uses of this new network.  They are limited to the financial transaction(s) or wireless / cellular phone transactions. The Asserted Claims do not preempt all uses of notifications and account limits to provide security.  Even the abstract idea identified by FIS acknowledges that preemption is not an issue here. Because there is no preemption, the inventions of the Asserted Claims do not inhibit future advances in technology or improvements in transaction and account security.

### D. <u>The Asserted Claims Are Distinct And Different</u>

FIS glosses over the details of the claims, and the law.  It is very relevant that the abstract idea of <u>each</u> Asserted Claim be identified.  *Alice*, 134 S. Ct. at 2355 (elements of each claim must be analyzed individually and as an ordered combination). The parties have not agreed to representative claims.  Though FIS

argues, and the district court selected, certain claims as representative of others – this is incorrect.   The Asserted Claims are not representative as proven <u>supra</u>. Linguistic certainty is important in the analysis because the claims are directed to different invention(s).   It is to FIS's benefit to blur the lines, to make it more difficult to determine an inventive concept. The focus on mere elements of the claims, rather than the claims as a whole and as an ordered combination, results in an incorrect outcome.

### E.  <u>The Inventions Are Patentable And Distinct</u>

The above §I.A demonstrates how each Asserted Claims is patentably distinct such that there is no single representative claim, nor is the abstract idea correct for each Asserted Claim.  The specifications of the patents-in-suit are also different. The '270 Patent is a separate patent, that contains subject matter that is not in the '003 Patent. It is a continuation-in-part that contains additional embodiments that were not expressly set forth (but were inherent) in the parent application. <u>See</u> Opening Brief at 28-29; 31-33. The '270 Patent is directed to account security and notifying the account owner of activity on an account.  This is different from transaction security, and occurrence of a transaction (on an account). The '270 Patent added discussion of brokerage accounts, electronic money accounts and other financial accounts.  It was not just banking accounts, checking, savings or ATM accounts.  The invention(s) of the '270 Patent provide notification

to the account holder in a timely manner so as to monitor, and prevent fraud or error for financial accounts, brokerage accounts, electronic money accounts, electronic cash accounts and/or digital cash accounts especially in cases when an individual's investments are not properly executed or in instances when mistaken transfers, unauthorized transactions and/or unauthorized trading and/or withdrawals occurs. Appx0088-Appx0162.

## F.  Recent Developments In Federal Circuit Law

Two recent cases from the Federal Circuit give guidance on this inquiry. In *Vehicle Intelligence,* the Court looked closely at how the "expert system" set forth in the claims "works or how it produces faster, more accurate and reliable results." 2015 WL 9461707 at *3. There, the Court concluded that "critically absent from the entire patent is how the existing vehicle equipment can be used …" Id. There was no explanation on how the "expert system" measured, determined, and performed other necessary steps of the claims for determining "impairment" of a driver. Id.

The Asserted Claims of the Patents-in-Suit are different. The Asserted Claims are directed to a new network that provided an improvement in the prior art security methods.  The ordered combination analysis of each Asserted Claim defines the new network with the claim language: new communication channels, how the newly configured hardware and software operated, improved processing

of electronic transactions, new data at the time of the transaction approval or disapproval. Opening Brief, at 42-48. The specification describes layered security in detail, and explains how this new network includes the account holder in this process – which was not previously possible due to lack of technology and security concerns. Id. When the Asserted Claims are analyzed as an ordered combination, in view of the specification, no further explanation is needed. A POSITA, such as JBTS's expert Alex Cheng, would understand how the system operates. Id. The Asserted Claims are "rooted in computer technology in order to satisfy a need" for more security environment for transaction processing on the Internet.

The Federal Circuit also pointed to the deficit of the invention in the asserted claims in issue in *Mortgage Grader, Inc. v. First Choice Loan Services Inc.*, Case No. 2015–1415, 2016 WL 362415 (Fed. Cir. Jan. 20, 2016, *errata* issued Jan. 28, 2016). In that case, there was no distinction made as to the claims being different from representative claims, and nothing in the claims purported to improve the functioning of the computer itself, or effect an improvement in any other technology or technical field." Id. at *7. This is not true with the Asserted Claims on appeal. The Asserted Claims improve the functioning of financial transaction processing systems and provide a great improvement in that field. See discussion at §I.A supra.

### G. **The Jack Henry Action Raised More Questions Than It Answered**

FIS argument that no analysis is necessary and the findings of the *Jack Henry* court, and the Federal Circuit's *per curiam* affirmance in that appeal, applies equally here is incorrect. Neither the elements of *res judicata* nor collateral estoppel are met. FIS did not argue either of these defenses because it knows the facts do not support such a finding.

Nonetheless, FIS alleges that simply because the asserted claims are part of the same '003 Patent, that they should be invalidated.[7] The Asserted Claims are not the same. The asserted claims against FIS are very different – they have additional structure and components that are not in the asserted claims against Jack Henry. The proceedings before the District of Delaware, and the issues taken on appeal, were different. Those decisions left more questions than they answered, leaving JBTS with no choice but to file a petition for *writ of certiorari*. (Case No. 15-974, filed Jan. 11, 2016).

### H. **FIS's Due Process Discussion Involves Circular Logic And Ignores JBTS's Arguments**

FIS's categorical and simplistic denial of JBTS's due process argument because courts are authorized to invalidate patents under 35 U.S.C. §101 does not

---

[7] The '003 Patent has 424 claims. Twelve claims were asserted in JBTS v. JHA, and found invalid under 101. Nineteen different claims of those 424 claims were asserted against FIS, and the subject of the instant appeal.

answer any question that JBTS raised.  JBTS has never asked nor implied that the District Court's judgment below should be reversed on the basis that courts are not empowered to invalidate claims that were improperly granted by the USPTO. FIS's citation to *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988) is misplaced as that case held that courts could invalidate patent claims under the Constitution, nothing more.  FIS's analysis amounts to the circular argument that due process must have been achieved because the District Court below applied the *Mayo/Alice Test*. To say that this alone supports the conclusion that JBTS received due process is akin to concluding that election results represent an accurate result because votes were counted.  FIS has ignored this Court's statement that "a patent is a property right protected by the Due Process Clause … [that] requires an individualized analysis of 'the particular circumstances of the case.'" *Abbott Laboratories v. Cordis Corp.*, 710 F.3d 1318, 1327-1328 (Fed. Cir. 2013) (<u>citing</u> *Fla. Prepaid Postsec. Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 642 (1999); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir.1985); *Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 485 (Fed. Cir. 1985)).  FIS's response oversimplifies to such a degree that it cannot be credited.

JBTS was very clear as to how it feels its due process rights were violated. Opening Brief at Argument, §II.  JBTS has described in detail above how the District Court misapplied the *Mayo/Alice* test to deprive JBTS of its property

rights.  With the confusion as to how and when to apply the steps of the test, it is not surprising that the District Court misapplied the test.  But that does not mean the mistake is acceptable.

### 1. An Arbitrary Test Violates Due Process

FIS asserts that JBTS asks this Court to re-write the *Mayo/Alice Test*.  Oonly the Supreme Court can change its judicially-created exception to the statutory guidance.  However, as this Court is charged in part with bringing consistency to the application of the patent laws for the district courts, it must help flesh out what the Supreme Court intended.  Currently, district courts have attempted to apply the *Mayo/Alice Test* with little guidance other than to compare and contrast to prior decisions.  JBTS raised a number of practical questions as to how to apply the *Mayo/Alice Test* not for argument's sake, but to point out how little courts have to guide them.  Such an arbitrary test violates due process.  *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government." (citation omitted))  As a result, an unbounded test for a judicially-created exception that is supposed to be rarely-applied has instead become an accused infringer's first line of defense.

FIS did not address the questions actually posed by JBTS.  FIS merely cited to a long list of cases in which patent claims have been invalidated under 35 U.S.C. §101 and concluded that the *Mayo/Alice Test* must not be arbitrary.  Conspicuously

omitted from FIS's discussion were cases in which patent claims were found to be not invalid.

### 2. The First Step Of The *Mayo/Alice* Test Is The Only One That Appears To Matter

Despite all the discussion of the *Mayo/Alice Test* as a two-step test, only step one seems to matter. As noted by at least one court, the "steps" seem to merge into a single step. See *McRO, Inc. v. Namco Bandai Games America, Inc.*, Case No. CV 12–10322–GW (FFMx), 2014 WL 4749601, *5 (C.D. Cal. Sep. 22, 2014), appeal pending, Case No. 2015-1080 (Fed. Cir. Dec, 11, 2015) Elements that might be recognizable (without considering the dangers of hindsight) are labeled "conventional" or "generic" and are discarded. There appears to be no need to support, with evidence, that the recited component of the claim was "conventional" or "generic" at the time of the application if it is described too broadly. This despite the requirement that the question of law at issue to be informed by subsidiary factual issues. *In re Comiskey,* 554 F.3d 967, 976 (Fed. Cir. 2009). This appears to be blurring step 1 of patentable subject matter analysis into the indefiniteness analysis (35 U.S.C. §112). It also dooms any components discarded in step 1 from being sufficient to "rescue" the claims in Step 2 of the *Mayo/Alice Test*. The "in combination" analysis is then usually skipped because there are no components left to analyze in combination with each other because they have been classified as "generic."

Are there gradations of "abstractness"?  This Court has implied as much when it stated that limiting the claims to a particular technology does not make claims "nonabstract."  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).  Aside from being an illogical statement and arguably an overstatement of the conclusion reached in *Alice*, it is indicative of the problem with identifying the abstract idea.     The morphing of the term "generically described" into the conclusory and pejorative term "generic" allows Courts to make legal judgements as to claims elements without having to resort to looking at evidence.  What should be a question of law based on underlying facts often becomes merely a question of law that ignores the facts.

As a final example of how the *Mayo/Alice Test* has morphed beyond its role as a low threshold is that the burden of proving invalidity seems to shift from the accused infringer to the patent holder, despite the statutory presumption of validity (see 35 U.S.C. §282(a) and the burden on the challenger to prove invalidity (see *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011)).  One Court has stated that, because it is not possible to prove a negative, the patent holder must prove that the claims add the "inventive concept," thus explicitly reversing the burden of proof.  *Voxathon LLC v. Alpine Electronics of America, Inc.*, Case No. 2:15-cv-562-JRG, 2016 WL 260350, *4 (E.D. Tex. Jan. 21, 2016).  This logic shows just how far from the intent of Congress some Courts have gotten through

the misapplication of the *Mayo/Alice Test*.  A test that ignores the statutory requirement that the challenger must disprove the statutory presumption that the USPTO correctly issued a patent claim cannot be correct.

## II. <u>ENTRY OF SUMMARY JUDGMENT OF NO INFRINGEMENT WAS IMPROPER</u>

Both parties agree that the issue of infringement of the asserted claims is moot if the district court's invalidity ruling is upheld.  However, the sole basis cited for the District Court's grant of FIS's summary judgment motion of non-infringement, that the asserted claims are invalid (<u>see</u> Appx0025), is not legally correct.  Neither the case cited by the District Court[8] nor the cases cited by FIS[9] support the proposition that a judgment of invalidity mandates a judgement of no infringement.  As JBTS pointed out in its Opening Brief (Section III), the Supreme Court has made clear that the two issues are separate.  *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. __, 135 S.Ct. 1920, 1929, 191 L.Ed.2d 883 (2015).  At most, a finding of invalidity renders infringement arguments moot.  *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1335 (Fed. Cir. 1998).  Therefore, the District Court's non-infringement ruling should be vacated.

---

[8] *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (no liability for infringement of invalid claim).

[9] *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1364-1365 (Fed. Cir. 2008).

## III. CONCLUSION

The proper interpretation of a federal statute, particularly one that has explicit origins in the Constitution, is always an issue of significant, national importance. That is just as true today as it was over 160 years ago when the Supreme Court first considered the meaning of §101.  <u>See</u> *Le Roy v. Tatham,* 14 How. 156, 175, 14 L.Ed. 367 (1852); *O'Reilly v. Morse*, 15 How. 62, 112–120, 14 L.Ed. 601 (1853).  It is also just as true today as it was in *Alice*, decided less than two years ago.  If anything, the importance of what is eligible for patenting has only increased as §101 challenges have become routine.  Insuring that the incentives to continue to pursue meritorious claims and defenses are calibrated properly is particularly important in David vs. Goliath cases like this one.  The Court below went too far by depriving JBTS of its property rights, and, if its decision is allowed to stand, could further undermine he rights of other patent holders.

The district court committed reversible error in granting summary judgment of invalidity and non-infringement.  For these reasons, the district court's decision should be reversed and the case remanded.

Dated: <u>February 18, 2016</u>      Respectfully submitted,


                      */s/ Maureen V. Abbey*
                      Maureen V. Abbey
                      Heninger Garrison Davis, LLC
                      3621 Vinings Slope, Suite 4320
                      Atlanta, GA 30339
                      Telephone: (404) 996-0862
                      Facsimile: (205) 547-5518
                      *Attorney for Plaintiff-Appellant,*
                      *Joao Bock Transaction Systems, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on this date, on behalf of Plaintiff-Appellant JOAO BOCK TRANSACTION SYSTEMS, LLC, I caused to be filed with the Clerk of the United States Court of Appeals for the Federal Circuit via the Court's CM/ECF system, which caused to be served by on all counsel of record, a copy of the <u>JOAO BOCK TRANSACTION SYSTEMS, LLC'S REPLY APPELLATE BRIEF.</u>

In addition, I served by electronic mail a copy on counsel as indicated below.

Dated: <u>February 18, 2015</u>          Respectfully submitted,

<u>/s/ Maureen V. Abbey</u>
Maureen V. Abbey
Heninger Garrison Davis, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Telephone: (404) 996-0862
Facsimile: (205) 547-5518
*Attorney for Plaintiff-Appellant,*
*Joao Bock Transaction Systems, LLC*

<u>For Plaintiff-Appellant:</u>
Timothy C. Davis ................................ tim@hgdlawfirm.com
Jonathan R. Miller .............................. jmiller@hgdlawfirm.com
Frank H. Cole, Jr. ............................... Frank.Cole@csklegal.com

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e) because it contains 6,906 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

DATED: <u>February 18, 2016</u>

Respectfully submitted,
**HENINGER GARRISON DAVIS, LLC**

<u>*/s/ Maureen V. Abbey*</u>
Maureen V. Abbey
*Attorneys for Plaintiff-Appellant, Joao Bock
Transaction Systems, LLC*